#26660, #26667-a-DG

**2013 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PEGGY HEWITT,                             Plaintiff and Appellant,

    v.

SHELLI RAE FELDERMAN,                     Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBIN J. HOUWMAN
Judge

* * * *

STEPHANIE R. AMIOTTE
Sioux Falls, South Dakota                 Attorney for plaintiff
                                          and appellant.


MELANIE L. CARPENTER of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellee.


* * * *

ARGUED SEPTEMBER 30, 2013

OPINION FILED **12/11/13**

#26660, #26667

GILBERTSON, Chief Justice

[¶1.]        Peggy Hewitt appeals a jury verdict awarding no damages in a personal injury suit against Shelli Rae Felderman.  Hewitt argues the evidence did not support the verdict, the court erred in denying a motion for directed verdict, and the court erred in denying attorney's fees and costs.  Felderman challenges the court's denial of costs and disbursements and the admissibility of certain expert testimony offered at trial.  We affirm.

**Facts and Procedural History**

[¶2.]        Peggy Hewitt was involved in two separate rear-end collisions that were the subject of the trial court action below.  Hewitt was in the front vehicle during both accidents.  The first accident occurred in the morning hours of January 11, 2007.  Hewitt was stopped at a stop sign off the Benson Road exit of I-229 in Sioux Falls when she was rear-ended by Dwight Berens.  Berens admitted fault in the accident and is not a party to this appeal.

[¶3.]        Following the first accident, Hewitt complained of pain and numbness in her head, neck, and left arm.  She was diagnosed with spinal sprain and strain injuries.  A chiropractor, a physical therapist, and other medical specialists treated Hewitt for loss of sensation, pain, headaches, and range of motion problems.  Hewitt was receiving treatment on a regular basis at the time of the second accident.

[¶4.]        The second accident occurred at approximately 7:30 a.m. on June 27, 2008.  Hewitt's son, Micah Hewitt, was driving Hewitt's 2006 Grand Prix westbound in the passing lane on I-229 with Hewitt in the passenger seat.  Near the 26th Street Bridge, a deer ran onto the interstate from a grassy area beside the

road. Hewitt's son braked, but was unable to avoid a collision with the deer. While the Hewitt vehicle was slowing or stopped, it was struck on the passenger side of the rear bumper by a 2005 Ford Expedition driven by Shelli Rae Felderman.

[¶5.]     Felderman was given a citation for following too closely and paid the fine without objection. Before and during trial, Felderman admitted to the uncontested citation, but maintained that she was not negligent in causing the accident. Hewitt filed suit against both Berens and Felderman for injuries sustained in the two accidents. The two lawsuits were combined in a single jury trial held December 10-14, 2012.

[¶6.]     At the close of the case, Hewitt moved for a directed verdict against Felderman on the issue of negligence. The trial court denied the motion. The trial court noted that there were reasonable grounds for the jury to find that the sudden emergency doctrine excused any negligence on the part of Felderman.

[¶7.]     The jury found Berens liable in the 2007 collision, and awarded Hewitt $60,000 against Berens for past and future medical expenses and pain and suffering arising from the first accident. The jury awarded no damages to Hewitt against Felderman for the 2008 collision. The jury's decision was rendered through special verdict. When asked "Was Shelli Felderman negligent in causing the June 27, 2008 collision?" the jury responded affirmatively. However, when asked "Was Shelli Felderman's negligence a legal cause of plaintiff's injuries or damages, if any?" the jury responded in the negative.

[¶8.]     After trial, Hewitt filed a motion for a new trial on the issue of damages, arguing insufficiency of evidence to support the verdict and inadequate

damages.  Hewitt also filed a motion for attorney's fees and costs, arguing that Felderman's failure to admit negligence unnecessarily increased the time and cost associated with bringing the case to trial.  The court denied these motions. Felderman moved as the prevailing party to recover specific costs and disbursements in the amount of $2,883.57.  The court also denied this motion, finding that neither party prevailed.

[¶9.]		The parties raise five issues in this appeal:

1.	*Whether the trial court abused its discretion by denying Hewitt's motion for directed verdict.*

2.	*Whether the trial court abused its discretion by denying Hewitt's motion for a new trial on the issue of damages.*

3.	*Whether the trial court abused its discretion by denying Hewitt's motion for attorney's fees and costs.*

4.	*Whether the trial court abused its discretion by denying Felderman's motion for costs and disbursements as the prevailing party.*

5.	*Whether the trial court erred in allowing testimony regarding future medical procedures.*

## Analysis and Decision

[¶10.]		1.	*Whether the trial court abused its discretion by denying Hewitt's motion for directed verdict.*

[¶11.]		Hewitt first argues that the trial court abused its discretion by denying Hewitt's motion for a directed verdict on the issue of Felderman's negligence. However, after the motion was denied, the jury rendered a verdict that did find Felderman negligent under the circumstances.  "An appeal will be dismissed as moot where . . . the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief."  *Cody v. Edward D. Jones & Co.*, 502

N.W.2d 558, 563 (S.D. 1993) (citation and internal quotation marks omitted).  A case is moot when the issue presented is academic or nonexistent and when "judgment, if rendered, will have no practical legal effect upon the existing controversy."  *Investigation of the Highway Constr. Indus. v. Bartholow*, 373 N.W.2d 419, 421 (S.D. 1985) (quoting *Maxwell v. State*, 261 N.W.2d 429, 432 (S.D. 1978)).

[¶12.]        Hewitt urges this Court to find there was no legally sufficient evidentiary basis for a reasonable jury to find for Felderman on the issue of negligence.  The controversy Hewitt puts before this Court—whether Felderman acted negligently—was already resolved by the jury in favor of Hewitt.  It becomes a purely academic exercise for this Court to determine whether the question of negligence should have been submitted to the jury.  Because this Court has no "effectual relief" to grant, the issue is moot.

[¶13.]        2.      *Whether the trial court abused its discretion by denying Hewitt's motion for a new trial on the issue of damages.*

[¶14.]        Hewitt next argues that the trial court erred by denying her motion for a new trial on the issue of damages.  A trial court's denial of a motion for a new trial is reviewed under an abuse of discretion standard.  *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 512-13 (citation omitted).  This Court will uphold a jury verdict "if the jury's verdict can be explained with reference to the evidence," viewing the evidence in a light most favorable to the verdict.  *Id.* ¶ 18 (citing *Itzen v. Wilsey*, 440 N.W.2d 312, 314 (S.D. 1989)).  This Court should only set a jury's verdict aside in "extreme cases" where the jury has acted under passion or prejudice or where "the jury has palpably mistaken the rules of law."  *Roth v. Farner-Bocken Co.*, 2003 S.D. 80, ¶ 10, 667 N.W.2d 651, 659 (quoting *Biegler v. Am.*

*Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 32, 621 N.W.2d 592, 601). In its order denying the motion for new trial, the trial court found "the verdict can be explained with reference to the evidence[.]" We agree.

[¶15.]        Hewitt argues that the jury ignored uncontested causation and damages evidence in this case,[1] and that the trial judge's explanation of the jury verdict using the sudden emergency doctrine[2] would not support the jury's award of zero damages. Although the trial judge did focus on the sudden emergency doctrine as supporting the verdict,[3] we need not follow that same rationale to uphold the

---

1.    Hewitt cites SDCL 15-6-59(a), which allows for a new trial based on excessive or inadequate damages, or for "[i]nsufficiency of the evidence to justify the verdict[.]"

2.    The jury was given South Dakota Pattern Civil Jury Instruction 20-30-30, which states:

> When a person is confronted with a sudden emergency, the person has a duty to exercise the care that an ordinarily prudent person would exercise in the same or similar situation. The defendant is not relieved of liability because of a sudden emergency unless, based on the facts, you find:
> (1)    that the defendant was confronted with a sudden and unexpected danger; and
> (2)    that defendant's own negligence did not bring about the situation; and
> (3)    that the defendant had at least two courses of action available after perceiving the dangerous situation; and
> (4)    that the defendant's choice of action after confronting the danger was a choice which a reasonably prudent person would have taken under similar circumstances, even though it may later develop that some other choice would have been better.

3.    The trial judge stated in a letter decision accompanying the Order Denying Plaintiff's Motion for New Trial, "Here the verdict can be explained because the jury could have determined that Ms. Felderman's negligence did not bring about the dangerous situation and that the dangerous situation was

(continued . . .)

jury verdict in this case. If the verdict is susceptible to more than one construction, this Court applies the construction which will uphold the verdict. *Morrison v. Mineral Palace Ltd. P'ship*, 1998 S.D. 33, ¶ 11, 576 N.W.2d 869, 872 (citation omitted).

[¶16.] "In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Highmark Fed. Credit Union v. Hunter,* 2012 S.D. 37, ¶ 9, 814 N.W.2d 413, 415 (citation omitted). In this case, the jury was asked in Special Verdict Form 2, "Was Shelli Felderman's negligence a legal cause of plaintiff's injuries or damages, if any?" The jury responded, "no." By this response the jury indicated that Hewitt failed to establish the causation element of her negligence case against Felderman. Viewing the evidence in the light most favorable to the verdict, we conclude that this verdict can be explained with reference to the evidence presented.

[¶17.] To prove causation, Hewitt relied heavily on the testimony of her doctors. Hewitt argues that she presented undisputed "medical legal causation" evidence at trial. Although the jury heard expert testimony stating that Hewitt likely sustained a mild cervical sprain or aggravation during the crash, "the jury is not obligated to accept an expert's opinion and may disregard the testimony if it desires." *Andreson v. Black Hills Power & Light Co.*, 1997 S.D. 12, ¶ 10, 559 N.W.2d 886, 889 (citing *State v. McCord*, 505 N.W.2d 388, 394 (S.D. 1993)). "[T]he purpose of expert testimony is to assist the jury as the trier of fact and not to

---

(. . . continued)

the deer running onto the road and into the vehicle in which Ms. Hewitt was a passenger."

supplant it." *Bridge v. Karl's, Inc.*, 538 N.W.2d 521, 525 (S.D. 1995) (citation omitted). "This state is not a trial-by-expert jurisdiction." *Id.*

[¶18.] The jury had several reasons to reject the expert testimony presented. First, most of the medical expert testimony offered in this case was based on Hewitt's subjective complaints of pain. The jury was presented with significant evidence calling into question the credibility of these complaints. Hewitt's primary claim against Felderman was for injuries to the right side of Hewitt's neck and her right shoulder, but Hewitt's own testimony was inconsistent as to when she first started complaining of pain in these areas. Contrary to Hewitt's testimony, Hewitt's doctors testified that Hewitt complained of pain and tenderness in her right arm, shoulder, and neck, and restricted range of motion *before* the accident with Felderman. Furthermore, jurors were presented with evidence that on at least one occasion, Hewitt reported significant pain to one of her doctors, and the same day reported feeling "well" to another doctor.

[¶19.] Other evidence presented in this case further undermined the causal link between Felderman's negligence and the alleged injuries for which Hewitt sought damages. After the accident, Hewitt told Felderman that she was not injured. Hewitt's daughter, a nurse, came to the scene of the accident and left without rendering aid or taking her mother to the emergency room. Furthermore, the jury was presented with evidence that Felderman's vehicle may not have been damaged at all in the collision.

[¶20.] The jury in this case was also presented with several alternative causes of the alleged injuries, including: (1) Micah Hewitt slamming on the brakes

to avoid the deer and the subsequent collision with the deer;[4] (2) an accident in Florida in March 2009 in which a pickup ran a red light and struck the vehicle in which Hewitt was a passenger; (3) Hewitt falling down the stairs in her home; (4) Hewitt riding Space Mountain and other rides at Disney's Epcot Center, while already suffering from spinal problems;[5] and (5) Hewitt overusing the right side of her body to compensate for left side injuries sustained in the 2007 accident.

[¶21.]     Given this evidence which supports the jury's verdict, this Court is not inclined to supplant the jury's important role as finder of fact. Hewitt has failed to prove that the jury acted under passion or prejudice, or that the jury palpably mistook the rules of law in reaching its verdict. Accordingly, we conclude that the trial court did not abuse its discretion by denying Hewitt's motion for a new trial.

[¶22.]     3.     *Whether the trial court abused its discretion by denying Hewitt's motion for attorney's fees and costs.*

[¶23.]     Finally, Hewitt contends that the trial court abused its discretion by denying Hewitt's motion for attorney's fees and costs. A trial court's ruling on the award of attorney's fees and costs is reviewed for an abuse of discretion. *Eagle*

---

4.     At trial Hewitt's experts referred to the term accident or "crash" generally. The doctors did not distinguish between the Hewitt's car striking the deer and the collision between the two cars. Thus, the jury was left with no clear evidence that the injuries complained of were caused specifically by Felderman's vehicle rather than any other force at work in this mixed-impact accident.

5.     Disney's webpage for Space Mountain includes the following warning: "For safety you should be in good health and free from high blood pressure, heart, back or neck problems, motion sickness, or other conditions that could be aggravated by this adventure. Expectant mothers should not ride." During cross-examination, Hewitt was asked if she recalled seeing any of these types of warnings before getting on the ride. Hewitt said that she did not recall.

*Ridge Estates Homeowners Ass'n, Inc. v. Anderson*, 2013 S.D. 21, ¶ 13, 827 N.W.2d 859, 865 (citation omitted). A trial court has "broad discretion with regard to sanctions imposed." *Novak v. Novak*, 2007 S.D. 108, ¶ 16, 741 N.W.2d 222, 228 (citing *Stull v. Sparrow*, 92 Cal. App. 4th 860, 864-66, 112 Cal. Rptr. 2d 239 (2001)). South Dakota generally follows the "American Rule" on attorney's fees, under which each party usually bears the cost of their own attorneys. *Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 32, 827 N.W.2d 55, 67 (citation omitted). However, an exception to this rule exists if attorney's fees are authorized by statute. *Id.* (citation omitted).

[¶24.] Prior to trial, Hewitt served requests for admissions on Felderman, asking Felderman to admit negligence in causing the accident. Felderman responded by denying that she was negligent. Hewitt asserts that because Felderman denied being negligent, Hewitt "incurred attorney's fees and costs in the amount of $35,094.26 to prove negligence and liability[6] against Defendant Felderman." Because the jury later found Felderman negligent, Hewitt asserts that the trial court was required to order Felderman to pay the "reasonable expenses

---

6. It should be noted that Hewitt requested attorney's fees and costs associated with "proving *negligence and liability*." Many of the attorney's fees listed appear to have been incurred while proving *damages* (e.g., "Comparison summary of Dr. Segal's Report," "Letters to medical providers requesting medical records and bills," "Letter to Dr. Peterson with retainer for deposition").

incurred in making that proof," pursuant to SDCL 15-6-37(c).[7]  Hewitt argues that the trial court's failure to order payment of these expenses was an abuse of discretion.  We disagree.

[¶25.]	Although SDCL 15-6-37(c) says "the court shall" order payment of fees incurred in making the proof, the exceptions found in SDCL 15-6-37(c)(2) specifically grant the court discretion to deny the award of attorney's fees and expenses if the court finds "good reason" existed for a party to deny a request for

---

7.	SDCL 15-6-37(c)(2) provides:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under § 15-6-36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorneys' fees.  The court shall make the order unless it finds that:
>
> > (A) The request was held objectionable pursuant to § 15-6-36(a); or
> > (B) The admission sought was of no substantial importance; or
> > (C) The party failing to admit had reasonable ground to believe that the party might prevail on the matter; or
> > (D) There was other good reason for the failure to admit.

SDCL 15-6-36 provides in part:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of subdivision 15-6-26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request.

-10-

admission.[8] This includes a reasonable belief by the party failing to admit that the party "*might* prevail on the matter." SDCL 15-6-37(c)(2)(C) (emphasis added). The mere fact that a matter was later proved at trial does not establish that the party denying the admission was unreasonable in believing they might prevail on the matter.[9] *See Richardson v. Ryder Truck Rental, Inc.*, 540 N.W.2d 696, 702 (Mich. Ct. App. 1995) (citation omitted) (interpreting similar statutory language).

[¶26.]     In this case, Felderman had good reason to deny the request for admission, including a reasonable belief that she "might prevail on the matter." In denying Hewitt's motion for directed verdict and submitting the issue of negligence to the jury, the trial judge found that the issue of negligence involved a reasonable question of fact to be determined by the jury. Although the jury did find Felderman negligent, she had at least a reasonably defensible position. We therefore cannot conclude that the judge could not find any "good reason" for Felderman to deny the

---

8.     Conversely, the rule allows a court to reimburse a party for the costs of proving facts, where the denial of those facts is indefensible. *See Novak*, 2007 S.D. 108, ¶ 16, 741 N.W.2d at 227-28. In *Novak*, this Court upheld an award of attorney fees where the plaintiff denied fifty-seven requests for admissions of fact, and all fifty-seven were later proven by the defendant. *Id.* ¶ 17. The plaintiff in *Novak* denied that certain copies of checks were true and accurate copies and denied that the endorsements on checks were his mother's, even though the checks were deposited into her account. *Id.* The Court found that the plaintiff had given "scant support" for his failure to admit the accuracy or authenticity of those records. *Id.* ¶ 18.

9.     If this Court were to accept Hewitt's contrary interpretation, the American Rule would be effectively rendered null in a large category of our cases where a party requests an admission and is later successful on the merits of the case.

request for admission. Accordingly, the trial court did not abuse its discretion by denying the attorney's fees requested by Hewitt.

[¶27.]        4.        *Whether the trial court abused its discretion by denying Felderman's motion for costs and disbursements as the prevailing party.*

[¶28.]        We review the award of costs and disbursements, including the determination of who was the prevailing party, under an abuse of discretion standard. *Crisman v. Determan Chiropractic, Inc.*, 2004 S.D. 103, ¶ 19, 687 N.W.2d 507, 512 (citation omitted); *Fix v. First State Bank of Roscoe*, 2011 S.D. 80, ¶ 32, 807 N.W.2d 612, 621 (citation omitted). The "prevailing party" in a civil action may recover specific costs and disbursements "necessarily incurred in gathering and procuring evidence or bringing the matter to trial." SDCL 15-17-37. The prevailing party is "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Picardi v. Zimmiond*, 2005 S.D. 24, ¶ 16, 693 N.W.2d 656, 661 (citation omitted).

[¶29.]        The trial court denied Felderman's application for taxation of disbursements, finding that "neither plaintiff nor defendant are prevailing parties." Felderman argues that the trial court abused its discretion in finding there was no prevailing party, because judgment was rendered in Felderman's favor when the jury awarded zero damages. As the prevailing party, Felderman argues that the trial court should have allowed her to recover costs under SDCL 15-17-37.

[¶30.]        Even if Felderman were the prevailing party, the trial court has broad discretion under SDCL 15-17-52 to limit disbursements to a prevailing party "in the

interest of justice."[10]  As we have previously stated:

> A court is not required to grant recovery for disbursements
> simply because a party has achieved the status of a prevailing
> party.  While SDCL 15-17-37 grants no discretion, SDCL 15-17-
> 52 allows a court to "limit the taxation of disbursements in the
> interests of justice."  This statute grants discretion to deny
> recovery of disbursements even though SDCL 15-17-37 does not.

*Full House, Inc. v. Stell*, 2002 S.D. 14, ¶ 25, 640 N.W.2d 61, 67 (quoting *Culhane*,

2000 S.D. 101, ¶ 33, 615 N.W.2d at 590 (alterations and internal citations omitted).

Felderman has failed to carry her burden of convincing this Court that the trial

court's order was not "in the interests of justice," and thereby an abuse of discretion.

We conclude the trial court did not abuse its discretion and we affirm the trial

court's denial of costs and disbursements.

[¶31.]　　　5.　　*Whether the trial court erred in allowing testimony regarding future medical procedures.*

[¶32.]　　　Finally, Felderman argues that the trial court erred in allowing

testimony regarding Hewitt's potential need for future medical treatment.  Because

we are affirming the jury's complete denial of damages in this case, the issue is

moot.

## Conclusion

[¶33.]　　　Hewitt and Felderman have both failed to prove abuse of discretion by

the trial court.  For the above stated reasons, we affirm the trial court on all issues.

---

10.　　We have held on several occasions that it is not an abuse of discretion to
　　　limit, partially or completely, the award of disbursements and costs under
　　　SDCL 15-17-52.  *See, e.g.*, *DeHaven v. Hall*, 2008 S.D. 57, 753 N.W.2d 429;
　　　*Culhane v. Michels*, 2000 S.D. 101, 615 N.W.2d 580; *Michlitsch v. Meyer*,
　　　1999 S.D. 69, 594 N.W.2d 731.

[¶34.]		KONENKAMP, ZINTER and SEVERSON, Justices, and DAY, Circuit Court Judge, concur.

[¶35.]		DAY, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.