#27771-r-DG
**2016 S.D. 70**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JAMES "JAKE" MORDHORST,                          Appellant,

v.

DAKOTA TRUCK UNDERWRITERS
and RISK ADMINISTRATION SERVICES,        Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JANE WIPF PFEIFLE
Judge

\* \* \* \*

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota

and

MICHAEL ABOUREZK of
Abourezk Law Firm, PC
Rapid City, South Dakota              Attorneys for appellant.


WILLIAM C. GARRY
MELISSA R. JELEN of
Cadwell, Sanford, Deibert & Garry LLP
Sioux Falls, South Dakota             Attorneys for appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016
OPINION FILED **09/28/16**

GILBERTSON, Chief Justice

[¶1.]     James "Jake" Mordhorst sued Dakota Truck Underwriters and Risk Administration Services (collectively, "Insurers"), alleging they denied him workers' compensation benefits in bad faith.  Insurers moved to dismiss, arguing Mordhorst failed to state a claim upon which relief could be granted.  The circuit court granted Insurers' motion, and Mordhorst appeals.  We reverse and remand for further proceedings.

## Facts and Procedural History

[¶2.]     Twenty-year-old Mordhorst worked for Fischer Furniture in Rapid City.  While making a delivery on November 10, 2011, a 275-pound sofa fell off the back of a delivery truck and struck Mordhorst on the head and shoulders.  The force of the impact knocked Mordhorst to the ground, temporarily rendering him unconscious.

[¶3.]     Mordhorst sought medical treatment the following day.  According to Mordhorst's amended complaint in this case, two physicians and multiple physical therapists documented his resulting condition.  Mordhorst reported pain in his back and neck, and an MRI revealed a herniated disk in his back.  His medical providers also noted that he presented with a "head forward" posture, which indicates an attempt to compensate for back pain.

[¶4.]     On October 11, 2012, at Insurers' request, Mordhorst met with Dr. Nolan Segal, an independent medical examiner ("IME").  Dr. Segal concluded that the only injury Mordhorst sustained from the falling sofa was a "strain" that

resolved 18 days after the accident. According to Dr. Segal's report, Mordhorst's subjective complaints were not supported by objective findings.

[¶5.] On October 16, 2012, subsequent to Dr. Segal's report, Insurers terminated all workers' compensation benefits. On March 14, 2014, Mordhorst requested a hearing before the South Dakota Department of Labor in order to restore payments for medical treatment and medications. Insurers denied responsibility for coverage, but the Department disagreed. On May 8, 2015, the Department ordered Insurers to pay all past medical bills and interest as well as future medical expenses. Insurers did not appeal the Department's decision.

[¶6.] Mordhorst subsequently filed an action in circuit court seeking punitive damages for what he alleges was a bad-faith denial of workers' compensation benefits. Insurers moved for dismissal, arguing Mordhorst failed to state a cause of action upon which relief could be granted, and the circuit court granted the motion.

[¶7.] Mordhorst appeals, raising one issue: Whether the circuit court erred by granting Insurers' motion to dismiss.

### Standard of Review

[¶8.] "A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it." *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶ 9, 731 N.W.2d 184, 190 (quoting *Guthmiller v. Deloitte & Touche, LLP*, 2005 S.D. 77, ¶ 4, 699 N.W.2d 493, 496). Therefore, we review a circuit court's decision to grant such a motion de novo. *Id.* "For purposes of the pleading, the court must treat as true all facts properly [pleaded] in the complaint

and resolve all doubts in favor of the pleader." *Id.* (quoting *Guthmiller*, 2005 S.D. 77, ¶ 4, 699 N.W.2d at 496). However, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences[,] and sweeping legal conclusions cast in the form of factual allegations." *Id.* (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002)).

## Analysis and Decision

[¶9.]    The primary question in this case is whether Mordhorst stated a claim alleging the necessary elements of a bad-faith denial of workers' compensation benefits. Because "[t]he relationship between a workers' compensation claimant and an insurer is adversarial and not contractual[,]" *Hein v. Acuity*, 2007 S.D. 40, ¶ 18, 731 N.W.2d 231, 237, an action alleging bad faith requires more than an allegation of wrongful conduct, *id.* ¶ 16, 731 N.W.2d at 237. In South Dakota, such a claimant must prove two things to be successful: (1) "an absence of a reasonable basis for denial of policy benefits[,]" and (2) "the [insurer's] knowledge . . . of [the lack of] a reasonable basis for denial." *Id.* ¶ 18, 731 N.W.2d at 237 (emphasis omitted) (quoting *Champion v. U.S. Fid. & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)).[1] "[K]nowledge of the lack of a reasonable basis may be inferred and

---

1.    *Hein* and *Champion* omit the words *the lack of* from the language of the second prong. Thus, as stated in *Hein* and *Champion*, a claimant must prove the "absence of a reasonable basis for denial of policy benefits" and "the insurance carrier's knowledge . . . of a reasonable basis for denial." *Hein*, 2007 S.D. 40, ¶ 14, 731 N.W.2d at 236 (quoting *Champion*, 399 N.W.2d at 324). Literally read, however, these two prongs cannot be proved simultaneously—if no reasonable basis for denial exists, it is impossible to prove knowledge of a reasonable basis for denial (and vice versa). *Hein* and *Champion* took this language directly from the Colorado Supreme Court's decision *Travelers Insurance Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)

(continued . . .)

imputed to an insurance company where there is a . . . reckless indifference to facts or to proofs submitted by the insured." *Champion*, 399 N.W.2d at 324 (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) (en banc)).

[¶10.]     In this case, the circuit court granted the motion to dismiss because it concluded "that the insurance company did have a reasonable basis for denial of policy benefits and that the reliance upon a qualified physician who otherwise met the requirements of the statute was present[.]"  This conclusion, however, overlooks the procedural posture of this case.  This is an appeal from a dismissal under SDCL 15-6-12(b)(5) for failure to state a claim upon which relief can be granted.  Whether the circuit court was convinced that Insurers' basis for denying Mordhorst's claim was reasonable is immaterial.  Rather, the question before the circuit court is the same as the question on appeal—whether Mordhorst asserted facts that if true, establish the necessary elements of a bad-faith action.  *See Nygaard*, 2007 S.D. 34, ¶ 9, 731 N.W.2d at 190.  We think that he did.

---

(. . . continued)

(en banc).  *Savio*, in turn, directly quoted the Wisconsin Supreme Court's decision *Anderson v. Continental Insurance Co.*, 271 N.W.2d 368, 377 (Wis. 1978).  However, *Anderson* states the rule both with and without the words *the lack of*.  *Compare id.* at 376 ("[A] plaintiff must show . . . the defendant's knowledge . . . *of the lack of a reasonable basis* for denying the claim." (emphasis added)), *with id.* at 377 ("[W]e have stated above that, for proof of bad faith, there must be . . . knowledge . . . *of a reasonable basis* for a denial . . . ." (emphasis added)).  Because it is clear that the Wisconsin Supreme Court's later phrasing (omitting the words *the lack of*) was simply intended to be a restatement of its earlier phrasing (including the words *the lack of*), and given the logical impossibility of the later phrasing, we take this opportunity to correct our own rule statement going forward.

#27771

[¶11.]     The only basis for denial advanced by Insurers is their reliance on Dr. Segal's report. In his complaint, Mordhorst attacked the reasonableness of the report:

> 14. The Segal report was transparently biased. For example, Segal's report stated that Plaintiff's diagnosis was "subjective complaints of diffuse myofascial pain without objective findings to substantiate his numerous subjective complaints or limitations." In fact, medical records showed numerous objective findings consistent with Plaintiff's pain complaints, including an MRI showing a central disk protrusion at T7-T8, muscle spasm, and a head forward posture to compensate for the pain, as noted by Dr. Dietrich, Dr. Strain and the physical therapists who treated Mordhorst.
>
> 15. The Segal report was also transparently biased because it ignored Plaintiff's pain complaints which were consistently present after November 28, 2011, and in the same location of the thoracic disk herniation and documented in Plaintiff's medical records.

This narrative stands in stark contrast to Dr. Segal's conclusion that Mordhorst merely suffered an 18-day "strain." If Mordhorst's assertion that his medical records exhibited numerous, objective findings to substantiate his complaint is true, then a jury could easily conclude that Dr. Segal's report did not provide a reasonable basis for denying Mordhorst's claim.

[¶12.]     Even so, the circuit court rejected the notion that it is ever unreasonable for an insurer to act in accordance with an opinion given by an IME. According to the court, Insurers were not required "to second guess a physician who is qualified to offer an opinion[.]" In essence, the court held that an insurer's reliance on an IME's report to deny workers' compensation benefits is per se reasonable. In reaching this conclusion, the court relied on SDCL 62-7-1, which permits an employer to require an employee–claimant to submit "for examination to

a duly qualified medical practitioner or surgeon selected by the employer[.]"
However, on its face, SDCL 62-7-1 has no direct applicability to the question in this
case.[2] Moreover, juries are routinely called upon to evaluate the opinions of
experts—including medical practitioners—and to weigh those opinions against
countervailing evidence. *See Magner v. Brinkman*, 2016 S.D. 50, ¶ 16, 883 N.W.2d
74, 82 ("Fact finders are free to reasonably accept or reject all, part, or none of an
expert's opinion." (quoting *O'Neill v. O'Neill*, 2016 S.D. 15, ¶ 17, 876 N.W.2d 486,
494)). We see no reason to conclude that a workers' compensation insurer—whose
chosen business deals in such matters—is incapable of the same. Therefore, an
insurer's basis for denial is not necessarily reasonable simply because the insurer
relies on the opinion of a medical practitioner.

[¶13.] Regarding the second prong of a bad-faith action—i.e., whether
Insurers knew that there was a lack of a reasonable basis for denying Mordhorst's
claim—the circuit court focused solely on Mordhorst's claim that Dr. Segal's report
was biased and that Insurers knew it would be biased. However, while Mordhorst's

---

2. SDCL 62-7-1 states in full:

> An employee entitled to receive disability payments shall, if
> requested by the employer, submit himself or herself at the
> expense of the employer for examination to a duly qualified
> medical practitioner or surgeon selected by the employer, at a
> time and place reasonably convenient for the employee, as soon
> as practicable after the injury, and also one week after the first
> examination, and thereafter at intervals not oftener than once
> every four weeks. The examination shall be for the purpose of
> determining the nature, extent, and probable duration of the
> injury received by the employee, and for the purpose of
> ascertaining the amount of compensation which may be due the
> employee from time to time for disability according to the
> provisions of this title.

complaint does allege Dr. Segal's report was biased, that is not the only assertion relevant to the second prong. In his complaint, Mordhorst asserted:

> 16. *If Defendants had merely discussed the discrepancies in Dr. Segal's report with Dr. Segal*, it would have revealed that his opinions were unsupportable and contradicted by the medical records. This is evidenced by the fact that Dr. Segal abandoned his opinion that the work injury only caused an 18 day strain/sprain when asked questions in his deposition on cross-examination.

(Emphasis added.) This assertion, along with those quoted above in paragraph 11, necessarily implies that Insurers were aware of Mordhorst's medical records including the MRI that revealed he suffered from a herniated disk. Accepting this fact as true, a jury could also conclude that Insurers recklessly disregarded this evidence in favor of Dr. Segal's contrary report. *See Champion*, 399 N.W.2d at 324. Thus, treating Mordhorst's assertions as true and viewing them "in the light most favorable to the plaintiff," *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 2007 S.D. 33, ¶ 11, 730 N.W.2d 626, 631 (quoting *Osloond v. Farrier*, 2003 S.D. 28, ¶ 4, 659 N.W.2d 20, 22 (per curiam)), he stated a claim upon which relief can be granted.

## Conclusion

[¶14.] It is not necessary to determine whether Dr. Segal's report was lacking or whether Insurers' reliance thereon was actually unreasonable. Because the present case is an appeal from a Rule 12(b)(5) motion for dismissal, such issues are not properly before us. We decide only that Mordhorst asserted facts that if true, state a claim for bad-faith denial of a workers' compensation claim and that Insurers' reliance on Dr. Segal's report to deny benefits was not per se reasonable. Therefore, the circuit court erred by granting Insurers' motion to dismiss.

#27771

[¶15.] We reverse and remand for further proceedings.

[¶16.] ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.