#28159-a-SRJ
**2018 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

NICOLE M. HARVIEUX,                    Plaintiff and Appellant,

    v.

PROGRESSIVE NORTHERN
INSURANCE COMPANY,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE HEIDI LINNGREN
Judge

\* \* \* \*

ROBIN L. ZEPHIER of
Abourezk, Zephier & LaFleur, P.C.
Rapid City, South Dakota

JAMES L. JEFFRIES                    Attorneys for plaintiff and
Rapid City, South Dakota             appellant.

MARK J. ARNDT of
May & Johnson, P.C.                  Attorneys for defendant and
Sioux Falls, South Dakota            appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 19, 2018
OPINION FILED **07/03/18**

#28159

JENSEN, Justice

[¶1.]　　　Nicole Harvieux filed an action under her uninsured motorist insurance coverage (UM) with Progressive Northern Insurance Company for injuries she sustained in a car accident.  Harvieux also filed claims of bad faith and barratry against Progressive.  The UM claim was bifurcated from the other claims and resulted in a jury verdict of $16,296.75.  Following the jury verdict, the circuit court granted Progressive's renewed motion for summary judgment on the claims for bad faith and barratry.  Harvieux appeals.  We affirm.

## Background

[¶2.]　　　On November 29, 2007, Harvieux's vehicle was struck from behind by an uninsured motorist.  No injuries were reported at the scene of the accident, but Harvieux later drove herself to an emergency room after experiencing neck pain.  She was diagnosed with neck strain and discharged.  Two weeks later, a doctor again diagnosed Harvieux with neck strain and referred her for physical therapy.  Harvieux filed a first-party claim under the medical payments coverage provision (MPC) and UM provisions of her automobile insurance policy.

[¶3.]　　　Following the accident, Harvieux intermittently sought additional treatment for neck pain, including physical therapy and pain injections.  An MRI taken in 2011 showed Harvieux suffered a minimal disc bulge, but the neurologist conducting the MRI did not render an opinion whether the bulge was related to the 2007 car accident.  Progressive paid Harvieux's medical bills up to the $5,000 maximum under the MPC.

-1-

[¶4.] In May of 2011, Progressive offered to pay Harvieux $9,000 under the UM coverage (in addition to the $5,000 Progressive already paid under the MPC), in exchange for a complete release of her claims. The adjustor for Progressive believed that Harvieux's attorney verbally accepted the offer. Progressive then sent a letter to Harvieux's attorney to confirm the settlement. The letter included a $9,000 check and a settlement release providing for a release of all claims by Harvieux against Progressive. Harvieux then hired new counsel, who informed Progressive that Harvieux would not accept the $9,000 settlement offer. Harvieux did not sign the release or negotiate the check. Harvieux instead demanded the $100,000 policy limits under the UM coverage. Progressive declined. Harvieux then sued Progressive for her injuries under the UM coverage and for bad faith.

[¶5.] On March 5, 2014, after deposing Harvieux, Progressive moved to enforce the $9,000 as a binding oral settlement agreement between the parties. In response, Harvieux moved to amend her complaint to add a claim for barratry and additional claims of bad faith against Progressive. She alleged that the motion to enforce the settlement was frivolous and filed in bad faith. On April 29, 2014, the circuit court denied Progressive's motion to enforce the settlement and granted Harvieux's motion to amend her complaint.

[¶6.] In May of 2015, the circuit court granted Harvieux's motion to bifurcate her UM claim from her claims of bad faith and barratry. A jury trial was held on the UM claim in August of 2016. Harvieux claimed lost wages of over $250,000 due to her discharge from the South Dakota National Guard. She claimed her discharge was based in part upon her inability to perform an annual Army

Physical Fitness Test. However, evidence showed that Harvieux was able to take and pass the test 11 months after her accident and score over 90%. The jury awarded Harvieux $8,296.75 in medical bills, $2,000 for pain and suffering, and $6,000 for lost wages. After deducting the $5,000 previously paid by Progressive under the MPC and adding prejudgment interest on the past medical bills and lost wages, the circuit court entered a judgment of $16,724.79 on Harvieux's UM claim. On November 30, 2016, Harvieux filed an application for taxation of costs. The circuit court entered an order denying the application.

[¶7.]      Following the jury trial on the UM claim, Progressive renewed its motion for summary judgment on Harvieux's claims of bad faith and barratry. Harvieux filed a motion to defer ruling on Progressive's motion for summary judgment to conduct further discovery. The circuit court granted Progressive's motion for summary judgment on the bad faith and barratry claims and denied Harvieux's motion to defer ruling.

[¶8.]      Harvieux appeals the circuit court's rulings, asserting three issues for our review:

     1.    Whether the circuit court erred in granting Progressive's motion for summary judgment as to Harvieux's claims of bad faith.

     2.    Whether the circuit court erred in granting Progressive's motion for summary judgment as to Harvieux's claim of barratry.

     3.    Whether the circuit court erred in denying Harvieux's application for taxation of costs.

## Standard of Review

[¶9.]    "We review a circuit court's entry of summary judgment under the de novo standard of review." *Wyman v. Bruckner,* 2018 S.D. 17, ¶ 9, 908 N.W.2d 170, 174 (quoting *Heitmann v. Am. Family Mut. Ins. Co.,* 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508). We will affirm a circuit court's "grant of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided." *Id.* (quoting *Estate of Lien v. Pete Lien & Sons, Inc.,* 2007 S.D. 100, ¶ 9, 740 N.W.2d 115, 119).

[¶10.]    "A circuit court's refusal to grant additional discovery prior to awarding summary judgment is reviewed for abuse of discretion." *Gores v. Miller*, 2016 S.D. 9, ¶ 14, 875 N.W.2d 34, 39 (quoting *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 24, 848 N.W.2d 273, 281). A circuit court's award or denial of costs and disbursements is also reviewed for an abuse of discretion. *McLaren v. Sufficool,* 2015 S.D. 19, ¶ 4, 862 N.W.2d 557, 558.

## Analysis

> 1.    *Whether the circuit court erred in granting Progressive's motion for summary judgment as to Harvieux's claims of bad faith.*

[¶11.]    Harvieux claims Progressive initially acted in bad faith in valuing and discussing settlement of the UM claim. Harvieux argues the settlement offers constituted "lowball" offers that did not take into account Harvieux's policy limits; medical treatment and expenses; potential lost wages; and mental, emotional, and financial stress. Harvieux also attacks what she characterizes as "systematic, institutional bad-faith conduct of Progressive." She asserts Progressive engages in

unfair practices in order to force its insureds to accept unreasonable settlement offers. Harvieux argues that Progressive also acted in bad faith when it filed a frivolous motion to enforce the $9,000 settlement offer knowing that she had not accepted that offer. Finally, Harvieux claims that she should have been allowed to conduct further discovery before the circuit court heard the motion for summary judgment.

[¶12.] Progressive argues that there is no evidence to prove bad faith. Progressive claims that Harvieux's damages were reasonably in dispute before and after her lawsuit was filed. Progressive points out that it offered $9,000 before Harvieux filed her lawsuit and that it offered $20,000 prior to trial. Progressive claims that Harvieux unreasonably refused to discuss any settlement below the $100,000 UM policy limits and that Progressive properly defended the UM claim thereafter. Progressive also asserts that it valued Harvieux's claim correctly as the $16,000 jury verdict was nearly the same as Progressive's offer and far below Harvieux's demand. Finally, Progressive claims that it properly filed the motion to enforce the $9,000 settlement and that the motion was not relevant to the bad-faith claim under *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, 2009 S.D. 69, ¶ 14, 771 N.W.2d 623, 628.

[¶13.] A claim of first-party bad faith is an intentional tort that "typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." *Hein v. Acuity*, 2007 S.D. 40, ¶ 10, 731 N.W.2d 231, 235. "In [bad faith] cases, the [insurer and the insured] are adversaries, and therefore, an insurer is permitted to challenge claims that are

fairly debatable. However, a frivolous or unfounded refusal to comply with a duty under an insurance contract constitutes bad faith." *Id.* In order to be successful on a claim of bad faith, a plaintiff must prove: "(1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial." *Mordhorst v. Dakota Truck Underwriters & Risk Admin. Servs.*, 2016 S.D. 70, ¶ 9, 886 N.W.2d 322, 324 (quoting *Hein*, 2007 S.D. 40, ¶ 18, 731 N.W.2d at 237).

[¶14.] The undisputed facts show that, shortly after the accident, Progressive determined there was no dispute concerning liability or UM coverage. Progressive began paying Harvieux's medical bills under the MPC shortly after the accident but was unwilling to pay benefits under the UM coverage without a final release from Harvieux. The initial medical records available to Progressive show that Harvieux was diagnosed with neck strain from the accident. Harvieux began receiving physical therapy and later received injections to treat her pain. By July of 2008, Harvieux had exhausted her $5,000 MPC.

[¶15.] In September of 2008, Progressive offered to pay all of Harvieux's outstanding medical bills, plus $3,000 for pain and suffering, in exchange for a final release. Harvieux indicated she was unwilling to settle until she was back to her pre-accident condition. Harvieux continued to receive physical therapy and complain of neck pain. In May 2009, Progressive increased its offer to settle the UM claim by paying all medical expenses to date plus $5,000 for pain and suffering. Harvieux rejected the offer. In October 2009, Harvieux requested the UM policy limits of $100,000. Progressive then sent all of the medical records to an orthopedic

surgeon for a medical review. Following this review, the doctor opined that Harvieux suffered a "mild cervical strain" from the accident and that the amount and duration of medical care based upon this diagnosis was unusual and prolonged. The doctor also determined that Harvieux should have reached maximum medical improvement within approximately one year of the accident and that there was no evidence in the medical records that Harvieux sustained a permanent injury as a result of the accident. Based upon this review, Progressive denied Harvieux's demand for the $100,000.

[¶16.] Later in 2010, Harvieux retained an attorney. In early 2011, the attorney renewed Harvieux's demand for $100,000, advising Progressive that Harvieux may be required to leave her position with the National Guard because of her injuries from the accident. Harvieux had already incurred over $10,000 in physical therapy bills by this time. In May of 2011, Progressive increased its settlement offer to $9,000 plus the $5,000 already paid. This was the offer that Progressive's adjustor claimed was accepted by Harvieux's counsel and that was the basis for Progressive's later motion to enforce the settlement.

[¶17.] In December of 2011, Harvieux had an MRI of her neck, which showed that she had a minimal disc bulge that was not causing any nerve impingement. No opinion was rendered whether this bulged disc was caused by the accident. Harvieux claimed that she was discharged from the National Guard due to the injuries sustained in the 2007 accident and that she lost $250,000 in wages. The extent of Harvieux's injuries were disputed up to and throughout trial.

[¶18.] Based upon the record, the severity of Harvieux's injuries arising from the accident were fairly debatable. The respective valuations of the case by Progressive and Harvieux were extremely divergent. However, the facts taken most favorable to Harvieux fail to show that Progressive did not have a reasonable basis for its valuation of Harvieux's injuries. Further, the record also fails to create a jury question that Progressive knew there was not a reasonable basis for its valuation.

[¶19.] Harvieux also claims bad faith by Progressive in failing to pay her medical bills under the UM coverage after the MPC limits were exhausted. Progressive paid $5,000 of Harvieux's medical bills under the MPC coverage, but by the time of trial she claimed more than $10,000 in medical expenses arising from the accident. Harvieux claims that because liability was undisputed it was bad faith for Progressive to refuse to pay her medical expenses above the $5,000 MPC limit. Although liability was never in dispute, the extent of Harvieux's injuries and related medical expenses were in dispute throughout the case. The facts show that Progressive relied upon the medical diagnosis of a "mild neck strain" and an orthopedic surgeon's 2010 opinion that Harvieux's claims for medical treatment were "unusual and prolonged." Harvieux failed to present evidence to show this reliance was unreasonable. "[A]n insurer is permitted to challenge claims that are fairly debatable." *Hein*, 2007 S.D. 40, ¶ 10, 731 N.W.2d at 235.

[¶20.] Harvieux's claims of companywide bad faith by Progressive through its employee-bonus plan and other internal claims policies also fail. Harvieux presented evidence from unrelated cases suggesting the internal policies of Progressive were contrary to the terms of Progressive's insurance contracts with its

insureds and that such internal policies were unreasonable. However, Harvieux presented no evidence that her claims were not fairly debatable or that Progressive's internal policies caused it to unreasonably investigate or evaluate her UM claim.

[¶21.] The circuit court also did not err in granting summary judgment on Harvieux's amended bad faith claim pertaining to Progressive's motion to enforce the $9,000 settlement, nor did the court err in denying Harvieux's request to take the depositions of Progressive's defense counsel and in-house counsel. The circuit court determined that Progressive's decision to file the motion to enforce the settlement was not unreasonable or frivolous. The court also relied on *Dakota, Minnesota & Eastern Railroad Corp. v. Acuity*, determining that the post-filing conduct by Progressive of filing the motion to enforce settlement was not admissible to support the bad-faith claim.

[¶22.] We have held that litigation conduct by the insurer is generally not relevant to a claim of first-party bad faith. "[W]e believe it would be a rare case where the insurer's decisions and conduct in the underlying litigation would be admissible in a first party bad faith claim." *Dakota, Minn. & E. R.R. Corp.*, 2009 S.D. 69, ¶ 42, 771 N.W.2d at 635. In determining whether to receive such evidence, "[t]he appropriate inquiry for the circuit court . . . is whether the insurer's post-filing conduct sheds light on the reasonableness of the insurer's decision or conduct in denying insurance benefits." *Id.* On this record, the circuit court properly determined that the motion to enforce the settlement did not shed light on or otherwise impact Progressive's investigation or valuation of the case. The circuit

court properly denied the motions to compel the depositions, and it properly granted summary judgment on the bad-faith claim.

[¶23.] Finally, Harvieux claims the circuit court should have continued the summary judgment hearing under SDCL 15-6-56(f) to afford her additional time to conduct discovery on her claim for bad faith. The circuit court determined that Harvieux had opportunities to conduct discovery going back to 2011. The discovery Harvieux sought related mostly to Progressive's policies for handling claims, but Harvieux failed to show how this information would refute the evidence that the extent of her injuries were fairly debatable. The circuit court has discretion under SDCL 15-6-56(f) to determine whether a party has demonstrated that additional discovery is necessary to defeat the motion for summary judgment. *Gores*, 2016 S.D. 9, ¶ 14, 875 N.W.2d at 39. The circuit court did not abuse its discretion in denying the request for additional discovery under SDCL 15-6-56(f).

> 2. *Whether the circuit court erred in granting Progressive's motion for summary judgment as to Harvieux's claim of barratry.*

[¶24.] Harvieux argues Progressive's motion to enforce the verbal settlement of $9,000 was frivolous and malicious so as to justify a cause of action for barratry. She claims Progressive's motion to enforce the oral settlement agreement caused her more expense and unnecessarily delayed the litigation. Progressive argues the circuit court properly granted summary judgment because Harvieux was unable to produce any evidence of barratry.

[¶25.] SDCL 20-9-6.1 provides:

> Barratry is the assertion of a frivolous or malicious claim or defense or the filing of any document with malice or in bad faith

by a party in a civil action. Barratry constitutes a cause of action which may be asserted by filing a pleading in the same civil action in which the claim of barratry arises or in a subsequent action. A claim of barratry shall be determined in the same manner as any other substantive cause of action asserted in that civil action.

[¶26.]     This Court has previously defined a frivolous action as one that

exists when the proponent can present no rational argument based on the evidence or law in support of the claim. To fall to the level of frivolousness there must be such a deficiency in fact or law that no reasonable person could expect a favorable judicial ruling. Frivolousness connotes an improper motive or a legal position so wholly without merit as to be ridiculous.

*Johnson v. Miller*, 2012 S.D. 61, ¶ 12, 818 N.W.2d 804, 808 (quoting *Citibank (S.D.), N.A. v. Hauff*, 2003 S.D. 99, ¶ 31, 668 N.W.2d 528, 537). "A malicious action is one brought for an improper, unjustifiable motive." *Hauff*, 2003 S.D. 99, ¶ 32, 668 N.W.2d at 537.

An action is malicious if it is begun in malice, and without probable cause to believe it can succeed, and which finally ends in failure. Malice exists when the proceedings are instituted primarily for an improper purpose. An improper purpose occurs in situations where:

the plaintiff in the original action was actuated by any unjustifiable motive, as where he did not believe his claim would be held valid, or where his primary motive was hostility or ill will, or where his sole purpose was to deprive the defendant of a beneficial use of his property or to force a settlement having no relation to the merits of the claim.

*Id.* (quoting *Stratmeyer v. Engberg*, 2002 S.D. 91, ¶ 20, 649 N.W.2d 921, 926).

[¶27.]     Here, Progressive's motion to enforce the oral settlement agreement was neither frivolous nor malicious, as this Court has previously held that an attorney may orally bind a client to a settlement. *See Melstad v. Kovac*, 2006 S.D. 92, ¶ 10, 723 N.W.2d 699, 703 (recognizing the validity of an oral settlement

agreement between the attorney for the plaintiff and the insurer in the context of a personal injury claim). Progressive presented sworn testimony in support of its claim that Harvieux's original attorney orally agreed to accept the $9,000 on Harvieux's behalf. Both Harvieux's first attorney and Harvieux denied that she had agreed to the settlement, and the circuit court denied the motion to enforce settlement. But these facts are insufficient to create a jury question on the barratry claim.

[¶28.]     The law regarding oral settlement agreements and the facts of this case show that there was probable cause to support Progressive's motion to enforce the purported $9,000 oral settlement agreement. Therefore, Progressive's motion was neither frivolous nor malicious, and Harvieux's claim of barratry fails as a matter of law. The circuit court did not err in granting Progressive's motion for partial summary judgment on Harvieux's barratry claim.

[¶29.]     Harvieux also argues that additional discovery was needed to prove her claim of barratry and that the circuit court erred in denying her request to depose defense counsel and in-house counsel for Progressive. Harvieux made no showing in her affidavit under SDCL 15-6-56(f) how the testimony of either of Progressive's attorneys would support her claim for barratry. There is nothing in the record to show that either attorney was initially involved in handling the claim or involved in the discussions regarding potential settlement of the case in 2011. Further, because there was a factual and legal basis for the motion to enforce the alleged settlement, any claim that the motion was filed frivolously or maliciously would fail. Therefore, the circuit court did not abuse its discretion in determining

that the additional discovery would not defeat the motion for summary judgment. Because the circuit court was within its discretion to deny the depositions of the attorneys under SDCL 15-6-56(f), it is unnecessary to address whether the discovery of defense counsel and in-house counsel was privileged. The circuit court properly granted summary judgment for Progressive on Harvieux's claim of barratry.

> 3. *Whether the circuit court erred in denying Harvieux's application for taxation of costs.*

[¶30.]    Following the entry of the judgment on the UM claim, Harvieux filed an application and affidavit for taxation of costs in the amount of $6,997.38. At the hearing on the application, the circuit court contrasted Progressive's $20,000 offer, made just before trial, with Harvieux's $100,000 pretrial demand. The circuit court noted that Progressive's offer exceeded the jury's verdict on the UM claim. However, as noted by Harvieux's counsel, the $20,000 offer was not made as an offer to confess judgment on the UM claim, but rather as an offer to settle all of Harvieux's claims. The circuit court orally denied Harvieux's costs application, stating that it was exercising its discretion on the facts that "this was not under all of the circumstances, a plaintiff's verdict."

[¶31.]    In its oral ruling on the application, the circuit court further stated:

> It is my intention to deny the taxation of costs based on my ruling on the other matters regarding summary judgment. The manner in which the judgment came in, and combined with the totality of the record and most recent submissions, I feel that based on my decision on the other matters, that the taxation of costs would not be appropriate under [this]of facts and the jury verdict.

In the written order denying Harvieux's costs application, the circuit court stated that Harvieux "was not the prevailing party" in the action. Harvieux argues the circuit court erred because she was the prevailing party on the UM claim by virtue of the jury verdict and entry of judgment in the amount of $16,724.99. Progressive argues that regardless of whether Harvieux was the prevailing party on the UM claim, a circuit court has discretion to award or deny costs and disbursements to a prevailing party and that the court properly did so in this case.

[¶32.]     SDCL 15-6-54(d), SDCL 15-17-37, and SDCL 15-17-52 pertain to the taxation of costs and disbursements in civil actions in South Dakota. SDCL 15-6-54(d)(1) provides that "[e]xcept as otherwise provided by statute, costs and disbursements, other than attorneys' fees, shall be allowed as of course to the prevailing party *unless the court otherwise directs.*" (Emphasis added.) This Court has stated that the prevailing party is "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Hewitt v. Felderman*, 2013 S.D. 91, ¶ 28, 841 N.W.2d 258, 266 (quoting *Picardi v. Zimmiond*, 2005 S.D. 24, ¶ 16, 693 N.W.2d 656, 661). SDCL 15-17-37 provides:

> The prevailing party in a civil action or special proceeding may recover expenditures necessarily incurred in gathering and procuring evidence or bringing the matter to trial. Such expenditures include costs of telephonic hearings, costs of telephoto or fax charges, fees of witnesses, interpreters, translators, officers, printers, service of process, filing, expenses from telephone calls, copying, costs of original and copies of transcripts and reporter's attendance fees, court appointed experts, and other similar expenses and charges. These expenditures are termed "disbursements" and are taxed pursuant to § 15-6-54(d).

SDCL 15-17-52 provides that a circuit court "may limit the taxation of disbursements in the interests of justice."

[¶33.] As to the grant of costs and disbursements to a prevailing party, this Court has stated:

> A [circuit] court is not required to grant recovery for disbursements simply because a party has achieved the status of a prevailing party. While SDCL 15-17-37 grants no discretion, SDCL 15-17-52 allows a court to "limit the taxation of disbursements in the interests of justice." This statute grants discretion to deny recovery of disbursements even though SDCL 15-17-37 does not.

*DeHaven v. Hall*, 2008 S.D. 57, ¶ 52, 753 N.W.2d 429, 445. (quoting *Full House, Inc. v. Stell*, 2002 S.D. 14, ¶ 25, 640 N.W.2d 61, 67). Further, SDCL 15-17-53 grants a circuit court the ability to "reduce or disallow a taxation of disbursements that would be oppressive or work a hardship."

[¶34.] Harvieux was the prevailing party on the UM claim based on the $16,724.99 judgment entered, as she was "the party in whose favor the decision or verdict is or should be rendered and judgment entered." *Hewitt*, 2013 S.D. 91, ¶ 28, 841 N.W.2d at 266 (quoting *Picardi*, 2005 S.D. 24, ¶ 16, 693 N.W.2d at 661). To the extent the circuit court concluded Harvieux was not the prevailing party on the UM claim, this was incorrect, but the circuit court properly considered the "totality of the record" in its decision to deny Harvieux's costs application. The judgment on the UM claim was entered on November 1, 2016, but Harvieux's application for costs was not considered until the circuit court had granted summary judgment in

favor of Progressive on the claims for bad faith and barratry.∗ The claims for bad faith and barratry were bifurcated from the UM claim for trial under SDCL 15-6-42(b), but all of the claims were filed in this action. The hearing transcript shows that the circuit court determined that "the taxation of costs" on the UM claim "would not be appropriate under [this set] of facts and the jury verdict." The circuit court properly considered that the verdict was significantly less than Harvieux's demand and close to Progressive's offers to settle. The court also considered that Harvieux was unsuccessful on the bad-faith and barratry claims. These latter claims were a significant part of the discovery and pretrial motions in this case. "The trial court has broad discretion under SDCL 15-17-52 to limit disbursements to a prevailing party 'in the interest of justice.'" *Hewitt*, 2013 S.D. 91, ¶ 30, 841 N.W.2d at 266. Given this record, we cannot say that the circuit court abused its discretion in denying the application for costs.

## Conclusion

[¶35.] We affirm the circuit court's order granting Progressive's renewed motion for summary judgment on Harvieux's claims of bad faith and barratry. We also affirm the circuit court's determination denying Harvieux's application for taxation of costs.

[¶36.] GILBERTSON, Chief Justice, and ZINTER and KERN, Justices, and SEVERSON, Retired Justice, concur.

---

∗ Progressive did not file an application for costs as the prevailing party on Harvieux's claims for bad faith and barratry.