# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1380

_____

Donis M. Parker

*Plaintiff - Appellant*

v.

Arkansas Department of Correction, An Agency of the State of Arkansas

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: December 12, 2017
Filed: April 25, 2018

_____

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

_____

PER CURIAM.

Donis Parker sued her former employer, the Arkansas Department of Correction (ADC), alleging race, gender, and age discrimination. The district court[1]

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

dismissed Parker's age discrimination claim, and a jury found for ADC on the race and gender claims. Parker appeals, asserting an evidentiary error.

Parker, an African-American woman, worked for ADC for more than 17 years. In 2014, Parker was a lieutenant at ADC's Ouachita River Unit. As a lieutenant, Parker was a middle manager with supervisory responsibility for a shift of corrections staff. During any given shift, only the shift supervisor—usually a captain—was more senior than Parker.

As part of its compliance with the federal Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. §§ 30301–30309, ADC adopted procedures for responding to reports of sexual contact between prisoners. One such procedure, memorialized in an administrative directive to all ADC employees, was an investigatory checklist that staff were to follow when informed of a sexual incident between inmates. This so-called "PREA checklist" required staff to investigate the incident, separate the involved inmates, collect evidence, and report their findings to superiors. The PREA checklist listed procedures for both "rapes" and "consensual sexual acts."

On February 15, 2014, an inmate observed two other inmates engaged in a sexual encounter in a prison kitchen. Terry Douglas, a white male security officer on duty in the kitchen, was made aware of the incident but took no action. Jason Richard, a white male food service preparer, was also aware of the incident but took no contemporaneous action.[2] Rumors of the incident spread. Two white male security officers, Corporals Asumus and McDorman, heard the rumors and told their superior, Sergeant Rodney Petty. Petty, a white man, informed Parker, who was the shift lieutenant. Parker and Petty then told the shift captain, Gicelia Swopes (an African-American woman), about the incident. Swopes responded that the report was "just hearsay." Petty wrote an incident report but never submitted it through official

---

[2]Richard would later submit an incident report to the kitchen supervisor.

channels. Neither Parker nor Swopes submitted an incident report or followed the steps in the PREA checklist for either a rape or a consensual sexual encounter.

Senior Ouachita River Unit officials learned of the February 15 incident and ordered an internal investigation. The investigator found that Douglas, Parker, and Swopes had failed to adequately report and investigate the incident as set out in the PREA checklist. The investigator also found that Petty had informed his superiors (Parker and Swopes) of the incident, but had failed to go "above his shift commander's rank to ensure policy was followed." Using something called computerized voice stress analysis (CVSA), the investigator concluded that Douglas, Parker, and Swopes were being deceptive about the incident. Petty was also subjected to CVSA examination, but the procedure found he was not being deceptive. The two officers who had reported the rumors to Petty—Asumus and McDorman—were not subjected to CVSA. Nor was Richard, the food service worker. Following the investigation, Warden Dale Reed fired Douglas, Parker, and Swopes for violating ADC's policy on responding to inmate sexual misconduct. No one else was fired.

Parker sued ADC under Title VII of the Civil Rights Act, claiming that her termination was the result of race, gender, and age discrimination. The district court dismissed the age discrimination count at summary judgment, and set the race and gender claims for trial. ADC moved to exclude its internal investigation report as inadmissible hearsay. See Fed. R. Evid. 802. The district court ruled that Parker could use the report to impeach ADC witnesses, and reserved judgment on whether to receive the document as an exhibit. At trial, Parker examined Warden Reed on his reasons for firing her. Reed testified that, as the shift lieutenant, Parker was responsible for completing the PREA checklist even if her immediate supervisor (Swopes) was not concerned about the incident. Reed opined that, as a long-time ADC employee, Parker should have known better than to allow a PREA incident to go uninvestigated and unreported. Reed also testified that there was no need to

subject Richard, Asumus, or McDorman to CVSA because their reports were not contradicted by other sources. Reed's testimony recounted large portions of the internal investigation report, including the report's conclusions as to which ADC personnel were being deceptive.

At the close of evidence, ADC renewed its motion to exclude the internal investigation report as inadmissible hearsay. Following argument from both parties, the district court granted the motion and refused to give the jury access to the report during deliberations. The jury returned verdicts for ADC.

On appeal, Parker contends the district court erred by not admitting the internal investigation report as an exhibit. She argues that the report should have been admitted under the business records exception to the hearsay rule. That exception applies to "record[s] of an act, event, condition, opinion, or diagnosis" that a custodian can testify are contemporaneous, routinely made and "kept in the course of a regularly conducted activity of a[n] . . . organization," and that are not shown to lack trustworthiness. Fed. R. Evid. 803(6). "[E]videntiary rulings are reversed only for 'a clear and prejudicial abuse of discretion.'" Davis v. White, 858 F.3d 1155, 1159 (8th Cir. 2017) (quoting Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010)).[3]

We find no clear and prejudicial abuse of discretion. As an initial matter, we question whether Parker has established that the report, as a whole,[4] met the

[3]ADC argues that we should conduct plain error review because Parker did not make a renewed motion for judgment as a matter of law. See Fed. R. Civ. P. 50(b). Even assuming plain error review applies in this context, compare Fed. R. Civ. P. 51(d), and Fed. R. Crim. P. 52(b), with Fed. R. Civ. P. 46, it is not necessary here because Parker adequately preserved her evidentiary objection for appellate review.

[4]Parker did not ask the district court to redact the portions of the report that it determined were inadmissible; she argued only that the whole report should be received as an exhibit.

requirements of Rule 803(6); and she fails to cite evidence in the record to support her assertion that it does. In any event, even if the report qualified as a business record and was admissible as an exception to the hearsay rule, we do not see how the district court's ruling prejudiced Parker. While the district court ultimately decided not to admit the internal investigation report as a documentary exhibit, it permitted Parker to elicit the content of the report while questioning Reed. Parker contends that the jurors needed to read the report—which Reed relied on in deciding to terminate her—because it showed that ADC treated her differently than other employees with respect to the February 15 incident. But the internal investigation report does little more than suggest that ADC fired Douglas (a white man), Parker (an African-American woman), and Swopes (an African-American woman) because they failed to follow the PREA checklist and were not truthful about their response to the incident. To the extent she believed the report contained information helpful to her case, Parker was able to use that information to question Reed. Parker has failed to establish reversible error in how the district court handled this evidentiary issue.

We affirm the judgment of the district court.

_____