#30309, #30311-a-MES
**2025 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

TODD WEILAND,                                          Plaintiff and Appellant,

v.

PATRICK BUMANN,                                        Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE SANDRA H. HANSON
Judge

* * * *

MICHAEL D. BORNITZ
ABIGALE M. FARLEY of
Cutler Law Firm, LLP
Sioux Falls, South Dakota          Attorneys for plaintiff and
                                   appellant.


MELANIE L. CARPENTER
JAKE R. SCHNEIDER of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota          Attorneys for defendant and
                                   appellee.

* * * *

ARGUED
MARCH 19, 2024
OPINION FILED **02/19/25**

#30309, #30311

SALTER, Justice

[¶1.] Todd Weiland commenced this personal injury action against Patrick Bumann seeking damages for injuries sustained in a motor vehicle accident that occurred while Bumann was on duty as a trooper with the South Dakota Highway Patrol (SDHP). The circuit court denied Weiland's motion for partial summary judgment on the issues of negligence, contributory negligence, causation, and failure to mitigate damages, and the case was tried to a jury. The court also denied Bumann's pretrial request to apply a recklessness standard, rather than ordinary negligence.

[¶2.] At trial, Weiland sought to admit the Minnehaha County Sheriff's Department accident report, materials from the SDHP's investigation, internal SDHP policies, and representations allegedly made by Bumann's insurance adjuster. The court excluded the accident report and evidence of the insurance adjuster's representations and made certain redactions to the SDHP investigation materials. The court also precluded Weiland from making a per diem argument to the jury regarding non-economic damages.

[¶3.] The jury found Bumann was negligent, but also concluded Weiland was contributorily negligent, although not more than slight. The jury awarded Weiland a total of $18,661.50 in damages.

[¶4.] Weiland appeals, challenging the circuit court's adverse rulings. By notice of review, Bumann challenges the standard of care the circuit court applied and the denial of his motion for judgment as a matter of law on certain future damages. We affirm.

-1-

**Factual and Procedural Background**

[¶5.] Weiland and Bumann were involved in a car accident on November 10, 2017, south of Humboldt in Minnehaha County. Weiland works as a chiropractor at the Ortman Chiropractic Clinic in Canistota and was traveling east on Highway 42 toward his home in Sioux Falls. At that same time and location on Highway 42, Bumann was driving west, performing his duties as a SDHP trooper in his issued patrol vehicle. Bumann was in a no-passing zone and was driving behind two large vehicles pulling trailers. The speed limit at that location on Highway 42 is 65 miles per hour.

[¶6.] Bumann observed an eastbound vehicle with expired license plates traveling in excess of the posted speed limit. He activated the emergency lights on his patrol vehicle and prepared to make a U-turn to pursue the eastbound vehicle and initiate a traffic stop. Because his view was obstructed by the two vehicles in front of him, Bumann veered onto the north shoulder of the highway, looked to see if any oncoming vehicles were approaching, and began making a U-turn.

[¶7.] Approximately halfway through the turn, Bumann noticed Weiland's vehicle coming toward him in the eastbound lane. By Bumann's estimation, Weiland's vehicle was 150 feet away. Bumann attempted to accelerate forward into the south ditch to avoid impact, but there was not enough time to avert the collision entirely. The front right corner of Weiland's vehicle collided with the right rear end of Bumann's vehicle. As related by Bumann, the collision caused him to be "pushed forward. . . . Approximately a foot." The vehicles did not flip or spin, and no airbags deployed.

[¶8.]     After Weiland pulled to the side of the road, Bumann approached Weiland's vehicle and spoke with him.  Both men stated they were uninjured, and neither called an ambulance.

[¶9.]     Bumann reported the accident and Minnehaha County Deputy Sheriff Tyrone Albers arrived at the scene and completed an accident report.  However, Deputy Albers did not conduct an accident reconstruction, and his report was based on each parties' explanation of the event.  Deputy Albers's report identified Bumann's failure to yield as the only contributing circumstance and stated that Weiland was driving the speed limit.  The narrative in Deputy Albers's report stated, "[a] semi and trailer obstructed [Bumann's] view to the west and he did not see oncoming vehicle 1 [Weiland]."

[¶10.]     The SDHP investigated the accident to determine whether to discipline Bumann.  Sergeant Steven Schade, Bumann's immediate supervisor, determined that Bumann violated SDHP safety policies and that the accident was preventable.  Sergeant Schade recommended that Bumann receive a reprimand.

[¶11.]     Weiland brought suit against Bumann[1] in March 2020, asserting six claims: 1) negligence, 2) negligence per se – careless driving (SDCL 32-24-8), 3) negligence per se – improper U-turn (SDCL 32-26-25), 4) negligence per se – illegal lane change (SDCL 32-26-6), 5) negligence per se – unsafe turning (SDCL 32-26-22), and 6) negligence per se – reckless driving (SDCL 32-24-1).  Bumann denied

---

1.     Weiland also named the SDHP, but the circuit court granted the SDHP's motion for summary judgment on the basis of sovereign immunity.  That decision is not before us in this appeal.  Weiland later amended his complaint to assert claims solely against Bumann.

liability and causation, and alleged failure to mitigate damages and contributory negligence as affirmative defenses.

[¶12.] Weiland moved for partial summary judgment on the issues of negligence and causation and on Bumann's affirmative defenses of contributory negligence and failure to mitigate damages. Following a hearing, the circuit court denied the motion, concluding that "fact issues exist which preclude the grant of partial summary judgment on the issues of negligence, causation, contributory negligence, and failure to mitigate[.]"

[¶13.] Prior to trial, Weiland moved to admit testimony from Blake Dykstra who was working as a claims adjuster on behalf of Bumann. Dykstra allegedly told Weiland he could not submit bills from Ortman Clinic because Weiland worked there. Weiland claims he complied and that this, in turn, affected how the records of Weiland's treatments were kept. Weiland also sought admission of the SDHP's "[p]olicy manual and/or [Bumann's] training materials" and Sergeant Schade's report. Bumann, however, sought to exclude Sergeant Schade's report and the SDHP policies it referenced. Bumann also moved to preclude Weiland from making a per diem argument for non-economic damages.

[¶14.] The circuit court denied Weiland's request to call Dykstra, but instructed the parties they were "prohibited from criticizing the recordkeeping practices of the Ortman Clinic[.]" The court also granted Bumann's request to preclude Weiland from making a per diem argument.

[¶15.] On the topic of the SDHP report, the circuit court allowed evidence of certain SDHP policies and procedures "to the extent such information does not seek

to usurp the functions of the court or the jury and is otherwise admissible in keeping with the rules of evidence." The court also allowed Sergeant Schade's SDHP report but ordered certain redactions to remove determinations that Bumann violated SDHP policy, including the specific conclusion: "This would be a violation of South Dakota Highway Patrol Policy which states [a] . . . vehicle shall not be driven in a careless manner at any time. If Trooper Bumann would have waited and been able to get a better view of oncoming traffic he could have avoided the collision."

[¶16.] Prior to trial, Bumann argued that to establish liability, Weiland had to establish Bumann was reckless, relying on SDCL 32-31-1, -2, and -5, which address the application of traffic regulations to drivers of authorized emergency vehicles. Weiland opposed the request, however, and the circuit court concluded that the proper standard of care was ordinary negligence.

### Trial evidence regarding liability

[¶17.] At trial, Bumann testified about how the accident developed, and the jury also watched the SDHP vehicle's dash camera video that included footage of the moments before, during, and immediately after the accident. Bumann admitted that he could have prevented the accident if he had been more cautious and had waited longer to check for oncoming traffic. He also acknowledged that he told his supervisor that it was "100 percent my bad" and that he received a reprimand as a result of the accident.

[¶18.] Weiland testified about how the accident developed from his perspective. He said he was driving home from work when "all of a sudden a car was right in front of me, a police car was right in front of me. Like, it just dropped

out of nowhere.  Slammed on the brakes.  (Claps hands.)  Boom." He stated, "There was no time to think or react.  All I did was brace myself, slam on the brakes, and it happened almost immediately."  Weiland acknowledged he was traveling around 68 miles per hour or "[m]aybe a touch more.  I would normally drive at the speed limit or just - - just near it."

[¶19.]     As the responding law enforcement officer, Deputy Albers also testified at trial.  Summarizing the accident, he stated, "because of the tractor trailer that was in front of him, [Bumann] didn't see the oncoming vehicle that was driven by Mr. Weiland.  And he pulled out in front of him to go eastbound."  Deputy Albers also indicated that Bumann never suggested Weiland was at fault.

[¶20.]     Following Deputy Albers's testimony, Weiland made an offer of proof for the previously excluded accident report and argued that the report would satisfy the business records exception to the rule against hearsay.  The court again concluded the accident report was inadmissible, explaining, "[it] does not appear that there has been adequate foundation laid for the same to qualify under Rule 803(6) for regularly conducted business activity records or public records under [subsection] (8)."

[¶21.]     Sergeant Schade testified that Bumann suggested he was at fault "a hundred percent."  Sergeant Schade confirmed that Bumann never blamed Weiland for the accident.  In addition, Sergeant Schade explained how SDHP troopers accumulate safe driving miles while on duty and that Bumann acknowledged he was likely going to lose his safe driving miles.  Sergeant Schade testified that as a result of the accident, he recommended a reprimand for Bumann.

[¶22.]       Bumann's expert witness, Dr. Jerry Ogden, a civil and mechanical engineer, completed an engineering analysis of the accident, which included an examination of information from the event data recorder (EDR) located in Weiland's car. Dr. Ogden found that roughly five seconds prior to the accident, Weiland was driving 69 miles per hour in a 65 mile-per-hour zone. He explained that the damage on the front right corner portion of Weiland's vehicle was approximately 15 inches in length. Dr. Ogden also described the changes in the cars' velocities, the force felt by each respective car, and the effect on the person in each vehicle. In short, Dr. Ogden characterized the accident in unremarkable terms as "a scraping incident." In his opinion, the accident involved a low-impact collision that would have felt like "bumper cars" or the resulting impact "[i]f you pulled into your garage and hit the right front corner of your car pulling in at 7 miles per hour[.]"

***Trial evidence regarding damages***

[¶23.]       Weiland testified that he started to develop pain within an hour of the accident. He said he started chiropractic and massage therapy appointments soon after the accident and later obtained treatment from medical doctors. Weiland testified about the types of modalities and equipment he used to reduce his pain and described how the injury affected his work and personal life, acknowledging that he tried to continue with regular activities and hobbies even though they may have been painful.

[¶24.]       Weiland received chiropractic treatment from a chiropractic partner, who testified that following the accident, Weiland had "[c]onsistent muscle tightness, tone, taut fibers, hypertonicity, [and] guardedness." However, Weiland's

partner also noted that Weiland participated in strenuous activities after the accident, including carrying buckets of sand, sledding, and shoveling, and participated in various sporting activities. Weiland also treated with another chiropractor who recommended chiropractic and massage treatment to address Weiland's "[n]eck pain, headaches, back pain, [and] mid back pain[.]"

[¶25.] After massage and chiropractic treatments were unsuccessful, Weiland sought medical treatment from Christopher Janssen, M.D., who specializes in physiatry. Weiland reported that his symptoms became worse with "overhead activity, golfing, raising his arms over his head, and really almost any kind of prolonged activity." Dr. Janssen diagnosed Weiland with "whiplash associated disorder, cervical facet pain, and cervical myofascial pain." Although Weiland had "[r]elatively mild degenerative change of the cervical spine," predating the accident, Dr. Janssen opined this was not the cause of Weiland's pain.

[¶26.] Initially, Dr. Janssen "recommended some physical therapy to try to strengthen up and balance the muscles around the spine." Dr. Janssen testified the physical therapy "didn't give [Weiland] any long-standing relief," and he, therefore, administered trigger point injections to treat Weiland.

[¶27.] When those injections failed to help Weiland, Dr. Janssen referred him to Timothy Metz, M.D., who performed medial branch blocks and radiofrequency ablations on Weiland.[2] Dr. Janssen testified that the radiofrequency ablations were

---

2. Dr. Janssen explained that a medial block involves injecting numbing medication next to a nerve which "will deaden the nerve for a period of time." The process allows doctors to identify the pain-causing nerve and, in some instances, burn it in an ablation procedure.

effective in treating Weiland's pain and that Weiland could continue to undergo these procedures "[a]s long as they continue to work."

[¶28.] On cross-examination, Bumann questioned Dr. Janssen about Weiland's compliance with his physical therapy program. Dr. Janssen testified that Weiland—while still working through his physical therapy regimen—helped clean up after a tornado, helped lay flooring at his parents' house, ran a chainsaw, and lifted logs and branches. Dr. Janssen acknowledged entries in Weiland's physical therapy records, in which he stated that his pain was significantly reduced after completing stretches and exercises, but Weiland reportedly gave himself an F grade for follow-through on his home exercises.

[¶29.] Bumann called Walter Carlson, M.D., as an expert witness. Dr. Carlson is a retired orthopedic surgeon who performed an independent medical examination (IME) of Weiland. In Dr. Carlson's opinion, Weiland suffered a sprain/strain injury from the accident that would have healed in "a six- to 12-week time frame with proper treatment[.]" Dr. Carlson also testified that "Weiland's current neck complaints are more related to his arthritis in his neck[.]"

[¶30.] Before the case was submitted to the jury, one of the jurors asked the bailiff who would pay for an award of damages. The bailiff informed the juror that he could not answer and that all the information the jury needed to make its decision would be provided later on in the proceedings. Due to the juror's question, Weiland later sought the use of South Dakota Pattern Jury Instruction 10-20-60, which instructs the jury not to consider whether the parties have insurance. The

circuit court denied the instruction after finding that the issue of insurance had not been injected into the trial.

[¶31.]     In his rebuttal, Weiland called a third treating chiropractor who testified that "even routine activities" were affected by Weiland's pain from the accident. Weiland's stepson also testified in rebuttal and stated that Weiland did not have back pain before the accident and that following the accident, he "definitely had to limit his activities."

[¶32.]     At the close of evidence, Weiland moved for judgment as a matter of law[3] on the issues of negligence, contributory negligence, and failure to mitigate, and also renewed his request to allow a per diem argument for non-economic damages. The circuit court denied both. Bumann also sought a directed verdict on future damages and on liability, renewing his argument that recklessness and not ordinary negligence should apply. The court also denied both of Bumann's motions, and the case was submitted to the jury.

[¶33.]     The jury returned a verdict for Weiland. In its special verdict form, the jury found Bumann was negligent and that his negligence was a legal cause of Weiland's injuries. The jury also found Weiland was contributorily negligent, but less than slight. For its assessment of damages, the jury awarded Weiland $17,500 in non-economic damages and $1,161.50 in past medical expenses, but nothing for

---

3.     The parties use the terms directed verdict and judgment as a matter of law interchangeably, though the latter is the correct contemporary term used in our rules of civil procedure. *See Magner v. Brinkman*, 2016 S.D. 50, ¶ 11 n.5, 883 N.W.2d 74, 80 n.5 ("In 2006, the phrases *motion for directed verdict* and *motion for judgment notwithstanding the verdict* were changed to motion for *judgment as a matter of law* and *renewed motion for judgment as a matter of law*, respectively.").

his future medical expenses claim. Taking recoverable costs into account, the circuit court entered judgment for Weiland in the amount of $21,122.25.

[¶34.] Weiland appeals, raising several issues, which we restate as follows:

1. Whether the circuit court erred when it denied Weiland's motions for summary judgment and judgment as a matter of law regarding negligence, contributory negligence, and failure to mitigate.

2. Whether the circuit court abused its discretion when it excluded portions of Deputy Albers's accident report, the SDHP's investigation, and alleged representations by the claims adjuster.

3. Whether the circuit court abused its discretion when it refused Weiland's request to instruct the jury on the issue of liability insurance.[4]

[¶35.] Bumann raises two issues by notice of review:

1. Whether the circuit court erred when it applied an ordinary negligence standard to Bumann.

2. Whether the circuit court erred when it denied Bumann's motion for judgment as a matter of law on certain future damages.

In light of our disposition of Weiland's issues, however, we do not reach the issues raised by Bumann.

---

4. For the issues relating to the evidentiary rulings, the proposed jury instruction, and the per diem argument, Weiland also claims that "[t]he circuit court further erred" when it did not grant his motion for new trial. However, Weiland has oriented his arguments solely to the legal standards for each individual type of error and has not included a separate new trial argument under SDCL 15-6-59(a).

## Analysis

### *Summary judgment and judgment as a matter of law*

[¶36.]     "We review a court's denial of a motion for summary judgment under the de novo standard of review." *DT-Trak Consulting, Inc. v. Kolda*, 2022 S.D. 50, ¶ 11, 979 N.W.2d 304, 308 (citation omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Barr v. Cole*, 2023 S.D. 60, ¶ 18, 998 N.W.2d 343, 349 (citation omitted). Further, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* (citation omitted).

[¶37.]     We also apply the de novo standard of review to the circuit court's ruling on motions for judgment as a matter of law under SDCL 15-6-50, giving no deference to the circuit court's decision. *Center of Life Church v. Nelson*, 2018 S.D. 42, ¶ 18, 913 N.W.2d 105, 110–11 (citing *Magner v. Brinkman*, 2016 S.D. 50, ¶¶ 11–13, 883 N.W.2d 74, 80–81) (describing the departure from abuse of discretion standard of review to de novo review of motions for judgment as a matter of law). "Then, '[w]ithout weighing the evidence, the court must . . . decide if there is evidence that supports [the] verdict.'" *Id.* (citation omitted). "If sufficient evidence exists so that reasonable minds could differ, judgment as a matter of law is not appropriate." *Id.* (citation omitted). As with our review of summary judgment decisions, "we apply the same standard as the circuit court: we view the evidence in

the light most favorable to the verdict or to the nonmoving party." *Id.* (citation omitted); *Acuity v. Terra-Tek, LLC*, 2024 S.D. 49, ¶ 13, 11 N.W.3d 96, 100.

[¶38.] Weiland challenges the circuit court's denial of his motions for summary judgment and judgment as a matter of law on the issues of negligence, contributory negligence, and failure to mitigate damages. We address each in turn.

### Negligence

[¶39.] Before addressing the merits of Weiland's argument that the circuit court should have determined Bumann's negligence as a matter of law, we must first consider whether a justiciable controversy remains in light of the jury's ultimate verdict finding that Bumann was, in fact, negligent.

[¶40.] "A case is moot when the issue presented is academic or nonexistent and when 'judgment, if rendered, will have no practical legal effect upon the existing controversy.'" *Hewitt v. Felderman*, 2013 S.D. 91, ¶ 11, 841 N.W.2d 258, 262. Accordingly, "an appeal will be dismissed as moot where . . . the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *Id.* (omission in original).

[¶41.] On the mootness question presented in this case, our decision in *Hewitt* is instructive, if not controlling:

> [The plaintiff] urges this Court to find there was no legally sufficient evidentiary basis for a reasonable jury to find for [the defendant] on the issue of negligence. The controversy [the plaintiff] puts before this Court—whether [the defendant] acted negligently—was already resolved by the jury in favor of [the plaintiff]. It becomes a purely academic exercise for this Court to determine whether the question of negligence should have been submitted to the jury. Because this Court has no "effectual relief" to grant, the issue is moot.

*Id.* ¶ 12.

[¶42.]    The same analysis applies here.  Weiland's challenge to the circuit court's decision to deny his motions for summary judgment and judgment as a matter of law on the issue of Bumann's negligence no longer presents a live controversy.  Even if Weiland could prevail on his claim that the circuit court should have determined Bumann's negligence as a matter of law, which we do not hold, we cannot grant effectual relief because the jury separately resolved the negligence question in Weiland's favor.[5]  This issue is, therefore, moot.

***Contributory negligence***

[¶43.]    "Contributory negligence is negligence on the part of a plaintiff which, when combined with the negligence of a defendant, contributes as a legal cause in the bringing about of the injury to the plaintiff."  *Klutman v. Sioux Falls Storm*, 2009 S.D. 55, ¶ 24, 769 N.W.2d 440, 450 (citation omitted).  "There must be competent evidence of contributory negligence before the matter may be submitted to the jury."  *Id.* (citation omitted); *see also Johnson v. Armfield*, 2003 S.D. 134, ¶ 13, 672 N.W.2d 478, 482 (quoting *Lockwood v. Schreimann*, 933 S.W.2d 856, 859 (Mo. Ct. App. 1996) ("Stating '[t]he causal connection between excessive speed and

---

5.    Weiland contends that "[t]he prejudice resulting from the error in sending the issue of Bumann's negligence persists despite the jury's verdict."  Citing *Davis v. Knippling*, 1998 S.D. 31, ¶ 14, 576 N.W.2d 525, 529, Weiland argues that "[p]rejudice resulting from *any* error may be gleaned from looking at the entire record, including factoring in all errors."  However, *Davis* is not a mootness case, and the two erroneous instructions that were at issue had a discernable impact on the plaintiff's recovery.  *Id.*  That is not the case here, and, though Weiland claims that the instructions on negligence and contributory negligence "worked in tandem to result" to reduce his recovery, it is not clear how.

the collision must be established by the evidence and cannot be left to mere speculation and conjecture.'")) (alteration in original).

[¶44.]        However, we have long recognized that "questions of negligence, *contributory negligence* and assumption of the risk are for the jury in all but the rarest cases so long as there is evidence to support the issues.  It is only when reasonable [people] can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs."  *Stone v. Von Eye Farms*, 2007 S.D. 115, ¶ 6, 741 N.W.2d 767, 770 (emphasis added) (quoting *Pierce v. City of Belle Fourche*, 2001 S.D. 41, ¶ 22, 624 N.W.2d 353, 357).

[¶45.]        Here, we conclude there is sufficient evidence upon which the jury could find that Weiland was contributorily negligent, and the circuit court did not err when it denied his motions for partial summary judgment and judgment as a matter of law.  Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably found that Weiland's own actions contributed to the accident.

[¶46.]        The width of the impact to the right front corner of Weiland's vehicle was narrow—just 15 inches—and Weiland himself testified that he "maybe veered to the right because he was coming from my left."  This testimony is supported by other evidence that indicates the collision occurred on the right shoulder of the highway.  In other words, the jury heard evidence that Bumann nearly averted the collision entirely.

[¶47.]        In addition, the EDR in Weiland's automobile showed he was traveling at 69 miles per hour five seconds before the collision.  The speed limit in the area of

the crash is 65 miles per hour, and Weiland admitted he was speeding when he estimated he was driving 68 miles per hour. Though he was not asked to opine on causation, Dr. Ogden testified about the rate of downward acceleration and said the speed of Weiland's vehicle fell significantly after Weiland applied the brakes.

[¶48.] Generally, "[e]vidence that a party was exceeding the posted speed limit is sufficient to send the issue of contributory negligence to the jury." *Hoffman v. Oakley*, 647 S.E.2d 117, 122 (N.C. Ct. App. 2007). Weiland contends, however, that the circuit court erroneously submitted the issue of the contributory negligence to the jury "on the sole basis" that he was speeding, citing *Johnson v. Armfield*. In *Johnson*, we reversed a verdict for a defendant who admitted his own negligence but asserted the plaintiff had been contributorily negligent based on the defendant's speculative assertion that the plaintiff "must have been speeding or he wouldn't have pulled out onto the street in the first place[.]" 2003 S.D. 134, ¶¶ 11–13, 672 N.W.2d at 481–82.

[¶49.] In our view, Weiland's reliance upon the result in *Johnson* is misplaced because it is premised upon a parochial view of the evidence adduced at trial. Unlike the unsubstantiated guess that the plaintiff "must have been speeding" in *Johnson*, the evidence here established that Weiland was, in fact, speeding just before the collision which, a fair view of the evidence suggests, almost did not occur. *Id.* ¶ 12.

[¶50.] In his reply brief, Weiland suggests that expert testimony was necessary to prove the causation element of Bumann's contributory negligence, claiming the question does not fall within the common experience and capability of

a lay person. Though Weiland argued there was "no competent evidence" of contributory negligence in his opening brief, he did not raise the claim that expert testimony is required initially. For this reason, we question whether this argument is properly before us. *See Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 (quoting *Agee v. Agee*, 1996 S.D. 85, ¶ 21 n.4, 551 N.W.2d 804, 807 n.4) ("A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer.").

[¶51.]     But even if Weiland's expert opinion argument were before us, we have never held that expert testimony is categorically required to prove causation for contributory negligence based on excessive speed, and we decline to do so here. We appreciate the difficulty in determining the precise point where the laws of physics intersect with "the common experience and capability of a lay person[,]" *Matter of Drainage Permit 11-81*, 2019 S.D. 3, ¶ 42, 922 N.W.2d 263, 275, and we acknowledge that the question presented here is a close one. But given the particular evidence adduced at trial, we conclude that the causation issue relating to the contributory negligence claim was within the common experience and capability of a lay person, and there was sufficient evidence to support the jury's verdict finding contributory negligence.[6]

---

6.     Weiland also argues that "[a] new trial on damages is required" because the jury was instructed to reduce the damages in proportion to Weiland's negligence. Leaving aside the incongruity of Weiland identifying error with the failure to reduce a damages verdict he already views as insufficient, we believe the argument is not persuasive because it appears to presume that the jury did not reduce the damages. But that premise is not safe, and there is no reason to believe the jury did not reduce the damages. The special verdict form, submitted without objection, simply did not include a line that

(continued . . .)

*Failure to mitigate damages*

[¶52.]     As a general principle of damages, "a plaintiff must do all that is reasonable to minimize damages after a tort or breach of contract has occurred[.]" *Wasland v. Porter Auto & Marine, Inc.*, 1999 S.D. 134, ¶ 12, 600 N.W.2d 904, 907 (quoting *O'Brien v. Isaacs*, 116 N.W.2d 246, 249 (Wis. 1962)).

> The law imposes upon a party injured from another's breach of contract or tort the active duty of making reasonable exertion to render the injury as light as possible. If, by his negligence or willfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him.

*Ducheneaux v. Miller*, 488 N.W.2d 902, 917 (S.D. 1992). "The burden of proving that damages would have been lessened by the exercise of reasonable diligence on the part of the claimant is on the party that caused the damages." *Mash v. Cutler*, 488 N.W.2d 642, 648 (S.D. 1992).

[¶53.]     Bumann asserted that Weiland failed to mitigate his damages, arguing that Weiland did not properly follow through with some treatments and that he had participated in some activities that would have exacerbated any alleged injury. Weiland sought summary judgment and judgment as a matter of law on these claims, and the circuit court denied these motions. On appeal, Weiland argues

---

(. . . continued)

would have shown the amount of a reduction. The instruction was otherwise correct and consistent with SDCL 20-9-2's requirement that "the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence." *See State v. Ralios*, 2010 S.D. 43, ¶ 47, 783 N.W.2d 647, 660 (noting the general rule that presumes that juries follow a trial court's instructions).

"Bumann failed to present the requisite competent evidence Dr. Weiland's conduct was unreasonable and the proximate cause of further injury."

[¶54.]       Our review of the record leads us to conclude there was sufficient evidence to submit this issue to the jury. The jury heard evidence that following the accident, Weiland participated in various activities, some of which could be viewed as physically strenuous. For instance, following a tornado in 2019, Weiland completed yard cleanup where he "was running a chainsaw and lifting logs and branches[.]" Further, the jury heard testimony that since the accident, Weiland moved furniture and participated in recreational axe throwing.

[¶55.]       And by his own admission, Weiland's physical therapy follow-through was poor. As part of his prescribed physical therapy, Weiland was instructed to complete home exercises, but his medical records stated that he graded his effort as an "F follow through per home exercise due to work schedule." Additional corresponding evidence suggested that Weiland felt better when he did complete certain stretches, exercises, and swimming.

[¶56.]       Under the circumstances, we cannot accept Weiland's argument that the circuit court erred when it denied his motions for summary judgment and judgment as a matter of law on Bumann's failure to mitigate damages defense. His specific claim that "Bumann failed to present the requisite competent evidence Dr. Weiland's conduct was unreasonable and the proximate cause of further injury" is contrary to the evidence in the record.

***Evidentiary issues***

[¶57.] "A circuit court's 'evidentiary rulings will not be overturned absent a clear abuse of discretion.'" *Sedlacek v. Prussman Contracting, Inc.*, 2020 S.D. 18, ¶ 16, 941 N.W.2d 819, 822 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Weber v. Weber*, 2023 S.D. 64, ¶ 15, 999 N.W.2d 230, 234 (citation omitted).

[¶58.] "We review a circuit court's evidentiary rulings by utilizing a 'two-step process.'" *Sedlacek*, 2020 S.D. 18, ¶ 16, 941 N.W.2d at 822 (citation omitted). "First, we 'determine whether the trial court abused its discretion in making an evidentiary ruling.'" *Id.* (citation omitted). "[S]econd, we determine, 'whether this error was a prejudicial error that in all probability affected the jury's conclusion.'" *Id.* (alteration in original) (citation omitted). We have clarified that "the 'all probability' phrase should be understood as 'a reasonable probability that, but for [the error], the result of the proceeding would have been different.'" *State v. Carter*, 2023 S.D. 67, ¶ 26, 1 N.W.3d 674, 686 (alteration in original) (citation omitted). Importantly, "evidentiary rulings are only reversible 'when error is demonstrated *and* shown to be prejudicial error.'" *Sedlacek*, 2020 S.D. 18, ¶ 16, 941 N.W.2d at 822 (citation omitted).

[¶59.] Weiland argues the circuit court erred in denying his motion for new trial based on certain evidentiary rulings, specifically, the exclusion of Deputy Albers's accident report, the exclusion of portions of SDHP's investigation, and the exclusion of alleged representations made by Bumann's insurance adjuster.

### *Deputy Albers's accident report*

[¶60.]        Even if Weiland prevailed on his claim that Deputy Albers's accident report was admissible as a business record and a non-hearsay admission, the record establishes the absence of any prejudice.  Although the report itself was excluded, Deputy Albers testified about the content of his report at trial, including the portion of the report that indicated that Bumann's operation of his patrol car contributed to the collision.  Deputy Albers also confirmed that the report did not identify Weiland's operation of his vehicle as a contributing cause for the collision.  The report itself would have only provided the same evidence and its exclusion was not prejudicial.  *See Parker v. Arkansas Dep't of Correction*, 888 F.3d 396, 398–99 (8th Cir. 2018) (concluding the court's exclusion of an exhibit was not prejudicial, noting, "[w]hile the district court ultimately decided not to admit the internal investigation report as a documentary exhibit, it permitted [plaintiff] to elicit the content of the report while questioning [a witness]."); 14 Cyc. of Federal Proc. § 68:56 (3d ed.) ("Generally speaking, there is no prejudicial error where the testimony is restricted to facts otherwise fully proved.").

### *SDHP investigation*

[¶61.]        The circuit court ordered redactions for the portions of the SDHP investigation report that discussed Bumann's actions and findings relating to violations of SDHP policy.  Further, the court limited the use of the materials, admitting the SDHP policies to the extent that they would not "usurp the functions of the court or the jury" with regard to determining fault.  Weiland claims the SDHP report contained conclusions by Bumann's supervisor regarding who caused

the accident and whether the accident was preventable. He argues the court's redactions and limitations of this evidence was an abuse of discretion. We disagree.

[¶62.] As the circuit court concluded, the SDHP supervisor's opinion could have "confuse[d] the jury with fault standards different from negligence determinations appropriate to the trial in this case." The redacted language at the center of Weiland's argument was Sergeant Schade's opinions that the accident was preventable. However, "preventable" is not the same thing as solely responsible, and surely does not automatically prove negligence. At some level of abstraction, all accidents are preventable. As we have said, just because an accident occurs does not mean one of the involved parties was negligent. *See Carpenter v. City of Belle Fourche*, 2000 S.D. 55, ¶ 16, 609 N.W.2d 751, 759 ("the mere occurrence of an accident . . . will not of itself establish negligence against the unfavored driver").

[¶63.] The circuit court was concerned that the SDHP's conclusions about the preventable nature of the accident or Bumann's violation of an SDHP policy could confuse the jury on the applicable standard of care or usurp the function of the jury as the finder of liability. These were legitimate concerns, and the court acted within its discretion when it ordered the SDHP report redacted.

[¶64.] Weiland's argument that our decision in *Morrison v. Min. Palace Ltd. P'ship*, 1999 S.D. 145, 603 N.W.2d 193, supports his view that an employer's internal policies and procedures can be considered by the jury as evidence of negligence is unavailing. Simply put, we did not consider the admissibility of evidence relating to the employer's policies in *Morrison*, and we made no holding that would support Weiland's evidentiary argument. Instead, we rejected the

argument that an employer's policy definitively established "what the law requires of a reasonable person under the circumstances." 1999 S.D. 145, ¶ 12 n.4, 603 N.W.2d at 196 n.4 (quoting 57A Am. Jur. 2d. *Negligence* § 170 (2024)). Though we acknowledged that evidence of the employer's policy of inspecting its premises for snow and ice accumulation could establish a breach of the common law reasonableness standard, we did not hold that an employer's policy *must* be considered. *Id.*

[¶65.] In any event, Weiland has not established prejudice from those evidentiary rulings. Sergeant Schade and Bumann both testified at trial about the accident, the SDHP investigation, and the SDHP policy. During his testimony, Bumann admitted that he could have been more cautious and waited longer to see if there was any oncoming traffic before making the turn. Further, Sergeant Schade testified that he recommended Bumann be reprimanded. While the court redacted portions of the SDHP material and Sergeant Schade's report, most, if not all of the information in the materials and report, whether redacted or otherwise, was still presented to the jury through witness testimony.[7]

### *Dykstra's alleged representations*

[¶66.] Dykstra is a claims adjuster for Claims Associates and worked on Weiland's claim against Bumann. Weiland alleges that Dykstra told him he could not be compensated for chiropractic bills from the Ortman Clinic, presumably

---

7. To the extent that the excluded SDHP investigation evidence and Deputy Albers's accident report were directed at establishing Bumann's negligence, the jury's finding that he was negligent further diminishes the impact of the excluded evidence.

because Weiland worked there. These alleged representations made by Dykstra also supposedly affected how the treatments were documented—i.e., because he could not collect for the Ortman bills, Weiland testified that he merely kept a diary of his treatment and symptoms and not a proper medical record.

[¶67.] Bumann argues "that Weiland failed to preserve this issue for appeal" because "Dykstra was not called as a witness at trial, and Weiland failed to make an offer of proof regarding his testimony." It is well-established that "the proponent of excluded evidence must make the substance of the evidence known to the trial court by making an offer of the excluded evidence at trial or prior to trial by an offer of proof." *Wilcox v. Vermeulen*, 2010 S.D. 29, ¶ 7, 781 N.W.2d 464, 467 (citation omitted).

[¶68.] Though perhaps semantic, we note that Weiland *preserved* this issue for appeal by litigating the issue before the circuit court. However, the state of the record prevents us from conducting a meaningful review because we simply do not know how Dykstra would testify. Dykstra was not deposed, he did not submit an affidavit, and he did not testify before the circuit court at any point. The idea underlying Weiland's argument is that Dykstra would admit that he told Weiland he could not be reimbursed for Ortman Clinic bills, but that premise is not sustainable without an offer of proof.

[¶69.] Beyond this, it is difficult to perceive any prejudice from the exclusion of Dykstra's testimony at trial. Although it is not completely clear, it seems as though Weiland wanted to offer the testimony to augment his total medical bills, but he has not identified how he was prejudiced by not doing so. He testified that

he did not pay for the treatments at the Ortman Clinic, which were performed by his colleagues as a professional courtesy.

[¶70.]    And, regardless, there was no restriction on his ability to offer evidence of the value of the chiropractic treatment he received.  We also note that the court's ruling prevented Bumann from cross-examining Weiland and his colleagues about compliance with certain record keeping rules that are required when chiropractors are treating patients.  Under the circumstances, we affirm the circuit court's decision to exclude Dykstra's testimony.

*Jury instruction*

[¶71.]    During voir dire, two jurors said that they had similar insurance claims to Weiland's.  Later, during a routine recess at trial, one of the jurors asked the bailiff "who pays" for the damages awarded.  Outside the presence of the jury, the bailiff detailed the conversation to the circuit court:

> And one lady says, "I've got a question."
> And I said, "From your body language, I can tell that I don't think I can answer it, but I can't stop you from asking it."
> And she said, "Where does the money come from?  You know, does he have to pay for it?"
> And I said, "I was right the first time.  I can't answer that.  But you will get all of the information about that you need to hear to make a decision in the courtroom."

The trial continued without any objection from the parties.

[¶72.]    However, while the parties were finalizing jury instructions, Weiland proposed South Dakota Pattern Jury Instruction 10-20-60 which states, "Whether a party is insured has no bearing whatever on any issue that you must decide.  You must refrain from any inference, speculation, or discussion about insurance." Determining that the bailiff "properly responded" to the juror's question, the circuit

court denied the proposed instruction. Further, the court stated that it did not "think we're yet at a point where the issue has been explicitly injected into the subject matter of this such that this instruction is appropriate."[8]

[¶73.] "A circuit court's denial of proposed jury instructions is also reviewed under an abuse of discretion standard." *Sedlacek*, 2020 S.D. 18, ¶ 17, 941 N.W.2d at 823 (citation omitted). In *Beck v. Wessel*, 90 S.D. 107, 109–13, 237 N.W.2d 905–06 (1976), we affirmed the circuit court's unilateral decision to issue a simple negative response to the jury's question during deliberation, "Can you tell us the amount of insurance each party has?" Although we acknowledged the court should have consulted with the parties' attorneys, we recognized that the court's prompt answer avoided bringing the jurors back into court to admonish them against considering the existence of liability insurance. Such an admonishment, we reasoned, "may well have compounded the problem by making a much larger issue of liability insurance in the minds of the jury." *Id.* at 114, 237 N.W.2d at 909.

[¶74.] Here, the circuit court acted within its discretion when it assessed the need for the instruction and the risk that it posed of unnecessarily emphasizing the topic of liability insurance. The "who pays" question was posed to the bailiff by a single juror during a recess and not on behalf of the jury during deliberations. Also, the bailiff's answer was appropriate and seems to have resolved the issue because there were no additional questions on the topic.

---

8.     Strictly speaking, there was no liability insurance carrier in the traditional sense. As defense counsel explained, Bumann's conduct was covered by South Dakota's Public Entity Pool for Liability (PEPL fund). *See Pub. Entity Pool for Liab. v. Score*, 2003 S.D. 17, ¶¶ 9–10, 658 N.W.2d 64, 69 (discussing the PEPL Fund and citing cases).

[¶75.]     Weiland relies on an Illinois intermediate appellate court decision to support his argument that the circuit court erred when it denied the jury instruction. *See Baraniak v. Kurby*, 862 N.E.2d 1152, 1155 (Ill. App. Ct. 2007) *overruled on other grounds by Peach v. McGovern*, 129 N.E.3d 1249 (Ill. 2019).  In *Baraniak*, the trial court sent nonresponsive answers to two jury questions during deliberations asking who paid the plaintiff's medical bills.  862 N.E.2d at 1155.  The court's responses focused generally on the existing evidence and instructions but did not address the inquiry.  *Id.*  On appeal, the appellate court determined "there was a duty to answer [the jury's] questions, and the failure to do so resulted in prejudicial and reversible error, mandating a new trial."  *Id.*

[¶76.]     But the *Baraniak* decision lacks persuasive value here for the reasons stated above.  There is no indication that the question to the bailiff from a single juror during a recess reflected a collective inquiry from all the jurors.  The circuit court's determination that Weiland's proposed instruction was not necessary to neutralize a concern about liability insurance was within the range of permissible choices.

### *Per diem calculation argument*

[¶77.]     Before trial, Bumann moved to preclude Weiland from presenting a per diem calculation for non-economic damages.  Weiland sought to ask the jury for non-economic damages calculated at $75,000 a year for 40 years.  The court granted Bumann's motion, and Weiland now appeals, arguing the court's decision was erroneous and prejudicial.

[¶78.]     We have not previously confronted the propriety of per diem arguments, or arguments that suggest a sum of non-economic damages aggregated incrementally by using units of time.  *See Reindl v. Opitz*, 88 S.D. 223, 227–28, 217 N.W.2d 873, 876 (1974) (holding that objection to a per diem argument was not properly before the court on appeal).  Commentators have noted a split of authority regarding whether these per diem, or unit-of-time, arguments are appropriate, with many courts concluding the ultimate determination lies within the trial court's discretion.  *See* 2 American Law of Torts § 8:10 (noting that "courts are in wide disarray" on whether to allow a per diem damages argument and that some jurisdictions find the matter within the trial court's discretion); *see also*, James O. Pearson, Jr., *Per Diem or Similar Mathematical Basis for Fixing Damages for Pain and Suffering*, 3 A.L.R. 4th 940 (1981).

[¶79.]     In our view, both the relative infrequency of appellate challenges to per diem arguments in South Dakota and the nature of the topic itself suggest that these damage arguments do not differ fundamentally from the other myriad of topics the circuit court controls through the exercise of its discretion, including the argument of counsel.  *See Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 211 (8th Cir. 1981) ("[A]lthough we continue to condemn instructions requiring per diem mathematical calculations, we do not disapprove of per diem closing arguments as long as such arguments are carefully controlled by the district court."); *see also*, *Waldron v. Hardwick*, 406 F.2d 86, 89 (7th Cir. 1969) (holding the permission to argue for unit-of-time damages "should be left largely to the discretion of the trial judge").

[¶80.] Further, assigning a monetary value to pain and suffering is often properly based on certain increments of time. *See, e.g.*, *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388, 390 (Tex. Civ. App. 1968) ("The damage issues themselves divided the pain into periods of time. The time from injury to trial was one period, and from trial to the future was another. The law recognizes that pain is a proper item for recovery; that it is susceptible only for an approximate monetary evaluation, that jurors may arrive at a figure from their common knowledge and sense of justice, and that counsel may suggest what they believe the evidence will support."). Accordingly, we do not believe a per se rule regarding per diem or similar unit of time damages arguments is necessary but, instead, opt to allow circuit courts to exercise their discretion in each case to determine whether the argument is supported by the evidence.[9] *See, e.g.*, *Debus v. Grand Union Stores of Vermont*, 621 A.2d 1288, 1290 (Vt. 1993) ("A per diem argument is a tool of persuasion used by counsel to suggest to the jury how it can quantify damages based on the evidence of pain and suffering presented."); *Richardson v. Children's Hosp.*, 787 N.W.2d 235, 246 (Neb. 2010) (concluding per diem argument is proper where it is supported by the evidence); *Southard v. Hancock*, 689 S.W.2d 616, 618

---

9. Where the circuit court permits a per diem or unit of time damages argument, the court could also consider the propriety of an instruction explaining to the jury that the mathematical calculation for non-economic damages is offered as an argument but is not, itself, evidence. *See, e.g.*, *Vogel v. Fetter Livestock Corp.*, 394 P.2d 766, 772 (Mont. 1964) (reiterating that "the per diem argument is used for illustrative purposes," and recommending that the trial court "instruct the jury that any remark of counsel not sustained by the evidence is to be disregarded.").

(Ky. Ct. App. 1985) (holding a per diem argument is permissible if supported by the evidence).

[¶81.] Here, the circuit court's decision that prevented Weiland's counsel from making a per diem argument will not justify relief on appeal. Although the court incorrectly viewed per diem arguments as categorically barred, the court's decision is, nevertheless, supportable in this case as an exercise of discretion because the court could have reasonably concluded that the evidence was ill-suited to a per diem damages argument.

[¶82.] Weiland sought to use the per diem argument in conjunction with his anticipated life expectancy to argue for future non-economic damages for pain and loss of enjoyment of life. However, there was evidence adduced at trial that Weiland's pain had resolved, he had no restrictions, his injuries were not permanent, he required no further treatment, and he engaged in numerous physical activities since the accident. Weiland's proposed per diem argument that his pain and loss of enjoyment of life would persist for 35 years into the future was simply not supported by the evidence.

## Conclusion

[¶83.] Weiland's claims for summary judgment and judgment as a matter of law regarding negligence are moot. The circuit court's denial of summary judgment and judgment as a matter of law concerning contributory negligence was proper because there was evidence admitted at trial that would have permitted a finding of contributory negligence. Further, the court correctly denied Weiland's motion for summary judgment and judgment as a matter of law on the mitigation of damages

issue because there was sufficient evidence presented to submit the issue to the jury.

[¶84.]     We also conclude that the circuit court acted within its discretion when it excluded the accident report, redacted portions of the SDHP investigation materials, and refused to allow testimony from the claims adjuster, Dykstra.  Also, the court did not abuse its discretion when it declined to instruct the jury concerning the topic of liability insurance and when it precluded Weiland from making a per diem argument.

[¶85.]     We, therefore, affirm the circuit court judgment, making it unnecessary to address the issues identified in Bumann's notice of review.

[¶86.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.